

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-12-00623-CV

**TEAL TRADING AND DEVELOPMENT, LP**,
Appellant

v.

**CHAMPEE SPRINGS RANCHES PROPERTY OWNERS ASSOCIATION**,
Appellee

From the 216th Judicial District Court, Kendall County, Texas
Trial Court No. 06-500A
Honorable Michael Peden, Judge Presiding[1]

Opinion by: Luz Elena D. Chapa, Justice

Sitting: Sandee Bryan Marion, Justice
Rebeca C. Martinez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed: March 19, 2014

REVERSED AND REMANDED

Teal Trading and Development, LP appeals from the trial court's declaratory judgment in

favor of Champee Springs Ranches Property Owners Association. The trial court's judgment

declared that Teal Trading was estopped by deed to challenge the validity and enforceability of a

property restriction within its chain of title. On appeal, Teal Trading contends the trial court erred

by granting Champee Springs's motion for summary judgment, by denying its motions for

summary judgment, and by awarding attorney's fees to Champee Springs. We hold that neither

---

[1] Sitting by assignment. *See* TEX. GOV'T CODE. ANN. § 74.056 (West 2013).

Champee Springs nor Teal Trading carried their burdens on summary judgment. Because Teal Trading is not estopped by deed from challenging the validity and enforceability of the restriction, we reverse the trial court's judgment and remand the cause for proceedings consistent with this opinion.

## BACKGROUND

Teal Trading owns around 1,832 contiguous acres of land in the Texas Hill Country. The majority of its property lies in Kerr County, Texas, although some portion of its land spills into neighboring Kendall County, Texas.

Champee Springs represents residents of the Champee Springs Ranches subdivision and The Quarry at Champee Springs Ranches subdivision, which are located in Kendall County. *See* TEX. PROP. CODE ANN. § 204.004 (West 2007).

660 acres of Teal Trading's property and some or all of the land now comprising the subdivisions represented by Champee Springs were previously owned by E.J. Cop, who purchased 9,245.95 acres of land in Kendall and Kerr Counties on June 3, 1998. Cop platted and developed his property as Champee Springs Ranches. On June 4, 1998, Cop signed a "Declaration of Covenants, Conditions and Restrictions," which was recorded in the deed records of Kendall and Kerr Counties. *See* TEX. PROP. CODE ANN. § 202.001(1) (West Supp. 2013). The Declaration contains the property restriction at issue in this case. In relevant part, the Declaration states:

DECLARATION OF COVENANTS, CONDITIONS AND
RESTRICTIONS

* * *

THAT WHEREAS, E.J. Cop, hereinafter called the Declarant, is the owner of all that certain 9245.95 acres, more or less, tract of land ("PROPERTY") located in Kendall and Kerr Counties, Texas as more particularly described on Exhibit "A" attached hereto and incorporated herein for all purposes.

WHEREAS, the Declarant will convey the PROPERTY, subject to certain protective covenants, conditions, restrictions and easements as hereinafter set forth;

NOW, THEREFORE, it is hereby declared that all of the PROPERTY shall be held, sold, and conveyed subject to the following easements, restrictions, covenants, and conditions, which are established for the purposes of creating and carrying out a uniform plan for the improvement, development and sale of the PROPERTY and for the further purpose of protecting the value attractiveness and desirability of the PROPERTY for the mutual benefit of the owners of same and accordingly shall run with the title to the PROPERTY or any part thereof and bind the Declarant, his heirs, successors and assigns and all owners and purchasers of the PROPERTY, or any part thereof, their, [sic] heirs, successors, executors, administrators and assigns.

\* \* \*

2. There is hereby reserved unto Declarant a one (1) foot easement for precluding and prohibiting access to the PROPERTY or Ranger Creek Road or Turkey Knob Road by adjoining property owners other than Declarant and Declarant's express assigns. This easement is inside of and contiguous to the perimeter of the PROPERTY as described in exhibit "A" hereto, provided that no easement is reserved over, across or upon any public road right-of-way which is dedicated by and shown on that certain Plat of Champee Springs Ranches, a subdivision in Kendall and Kerr Counties, Texas, of record in Volume 3, Page 69, of the Plat Records of Kendall County, Texas, and further provided Tract 4 of said Champee Springs Ranches subdivision shall be entitled to one access entrance across the restrictive easement along the southwestern boundary line of said Tract 4, but none other access without Declarant's express written consent thereto.

We refer to the restriction in paragraph two as the "non-access restriction." The parties appear to agree that the non-access restriction prohibits any person, aside from Cop or his assignees, owning land along the original edge of the Cop tract from permitting other persons to have access across the edge of their property.[2]

---

[2] Champee Springs has analogized the non-access restriction to a wall surrounding a subdivision.

Cop then began to sell lots from his property. Because Champee Springs's estoppel by deed argument relies on the deeds within the chain of title from Cop to Teal Trading, we will summarize the conveyances in a timeline:

- June 3, 1998—E.J. Cop purchased 9,245.95 acres of land in Kendall and Kerr Counties.

- June 4, 1998—Cop signed the Declaration containing the non-access restriction.

- July 9, 1998—Cop sold 1,328 acres to C.R. Luigs.

- July 10, 1999—Luigs sold approximately 660 acres in Kerr County to Marrs and Marianne Bowman. The Bowmans platted the 660 acres as Privilege Creek Ranches, but did not sell any lots.

- July 11, 2006—Mallard Royalty Partners[3] purchased the Bowmans' tract. The Bowmans executed separate deeds conveying their respective interests.

- July 12, 2006—Mallard sold the 660 acres, and an additional 1,173 acres that had not been owned by Cop, to BTEX Ranch, LP.

- July 17, 2006—BTEX executed a deed of trust covering all of its property. BTEX attempted to develop its property as "Boerne Falls."

- November 12, 2009—Teal Trading acquired the deed of trust and foreclosed on BTEX's interest.

We will refer to the 660 acre tract sold by Luigs and now owned by Teal Trading as the "Privilege Creek tract." All of the deeds in the chain of title from Cop to Teal Trading state, in some form or another, that the property conveyed is "subject to" the restrictions in the Declaration filed by Cop.

When Cop acquired 9,245 acres, the portion of his property that would later be sold as the Privilege Creek tract was at the northwestern end of his tract. Therefore, the non-access restriction runs along the edge of the Privilege Creek tract to the extent that the edge of Privilege Creek tract was also the edge of the original Cop tract.

---

[3] Mallard Royalty Partners appears to be a Teal Trading related entity.

The additional 1,173 acres owned by Teal Trading adjacent to the Privilege Creek tract were not part of Cop's original 9,245 acres. Therefore, Teal Trading's additional acreage is, in some sense, "divided" from the Privilege Creek tract by the non-access restriction. By contrast, the Champee Springs Ranches subdivision also lies directly adjacent to the Privilege Creek tract. However, it is not "divided" from the tract by the non-access restriction because the property comprising the subdivision was also part of Cop's original tract.

### *The Present Dispute*

After BTEX acquired its property from Mallard, BTEX began to develop the entire property as a single, contiguous residential subdivision. BTEX then built a construction road that connected Turkey Knob Road to Lane Valley Road. Turkey Knob Road is located within the Privilege Creek tract and the Champee Springs subdivisions and gives those tracts access to Interstate 10, but it does not otherwise cross the "dividing line" created by the non-access restriction. Lane Valley Road is on the other side of the "dividing line" created by the non-access restriction. To enforce the restriction, Champee Springs intervened in a lawsuit filed by Kendall County against BTEX relating to BTEX's development. The trial court denied Champee Springs's intervention, but the court severed its claims into this cause. During this litigation, Teal Trading foreclosed on BTEX's interest and intervened in this lawsuit.

Champee Springs's petition sought a declaratory judgment that BTEX (and later Teal Trading) was bound by the non-access restriction and estopped to deny its force, validity, and effect, and because they were so bound, the restriction was enforceable against them. Teal Trading's petition-in-intervention denied that it was bound by the restriction, and it sought a declaratory judgment that the non-access restriction was void as an unreasonable restraint against alienation and that Champee Springs had waived the right to enforce the non-access restriction and was thus estopped from enforcing the restriction.

The parties each filed motions for summary judgment. The sole ground raised by Champee Spring's motion for summary judgment was the "threshold" issue of whether Teal Trading was estopped by deed from challenging the validity and enforceability of the non-access restriction. Teal Trading's motion for summary judgment and supplemental motion for summary judgment, on the other hand, raised six grounds for summary judgment, arguing that the non-access restriction was an invalid easement, that members of Champee Springs had waived the restriction's enforcement, and that the restriction was void as against public policy. Champee Springs filed a response contesting each ground raised by Teal Trading. The trial court granted Champee Springs's motion and denied Teal Trading's motions. After holding a hearing, the court then awarded attorney's fees to Champee Springs.

### STANDARD OF REVIEW

We review the trial court's summary judgment rulings de novo. *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). A party is entitled to summary judgment if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response." TEX. R. CIV. P. 166a(c). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). If both parties filed motions for summary judgment with the trial court, and one is granted and one is denied, the reviewing court determines all the questions presented and renders the judgment that should have been rendered by the trial court. *HCBeck, Ltd. v. Rice*, 284 S.W.3d 349, 352 (Tex. 2009).

**CHAMPEE SPRINGS'S MOTION FOR SUMMARY JUDGMENT**

Champee Springs's motion for summary judgment asked the court to declare that Teal Trading was estopped by deed from challenging the validity and enforceability of the non-access restriction contained in the Declaration. To support its estoppel argument, Champee Springs offered into evidence every deed in Teal Trading's chain of title to show the deeds were made "subject to" the restrictions in the Declaration. Because Teal Trading accepted its deed "subject to" the restrictions and every deed in Teal Trading's chain of title was made "subject to" the restrictions, Champee Springs argued that Teal Trading was estopped by deed from contesting the validity and enforceability of the restrictions.

### Estoppel by Deed

The doctrine of estoppel by deed precludes parties to a deed from denying the truth of any material fact asserted in the deed. *XTO Energy Inc. v. Nikolai*, 357 S.W.3d 47, 56 (Tex. App.—Fort Worth 2011, pet. denied); *Angell v. Bailey*, 225 S.W.3d 834, 842 (Tex. App.—El Paso 2007, no pet.); *see Greene v. White*, 153 S.W.2d 575, 583–84 (Tex. 1941) ("It is held that the recital of one deed in another binds the parties to the deed containing the recital, and those who claim under them, and may take the place of a deed and thus form a muniment of title."). Estoppel by deed binds, not only the parties to the deed, but also their successors-in-interest. *XTO Energy*, 357 S.W.3d at 55; *Angell*, 225 S.W.3d at 841. Estoppel by deed may arise from the recitals, reservations, and exceptions within a deed. *XTO Energy*, 357 S.W.3d at 55; *Angell*, 225 S.W.3d at 841; *see, e.g., Moore v. Energy States, Inc.*, 71 S.W.3d 796, 800 (Tex. App.—Eastland 2002, pet. denied) ("[T]he deed . . . stated that the public road 'lies immediately south' of the railroad right-of-way. Thus, the [grantors] and their successors in interest are estopped from denying that the public road lies immediately south of the railroad right-of-way and from claiming title to land between the public road and railroad right-of-way.")

Estoppel by deed is founded upon the theory that the parties have contracted upon the basis of the recited facts. *XTO Energy*, 357 S.W.3d at 56. Thus, although estoppel by deed "figuratively closes the mouth[s]" of the parties to a deed and their privies from challenging the truth of the recited facts in a deed, it "does not validate something that is otherwise invalid" and cannot bind or benefit strangers to the deed. *Id.*

The Texas Supreme Court's decision in *Greene v. White* illustrates how estoppel by deed may apply to grantees and their successors-in-interest. In that case, the successors-in-interest of the grantee to a 1910 warranty deed sued the grantors' successors-in-interest for title and possession of the minerals underlying a tract of land. *Greene*, 153 S.W.2d at 577. Under the warranty deed, the grantor conveyed 133 acres to the grantee, but reserved "all minerals on and under said land." *Id.* at 583. The grantee's successors attacked the validity of the 1910 deed, claiming that the grantee had already owned the surface of the 133 acre tract and that the grantor had lacked title to either the surface or the minerals of the tract. *Id.* at 584. The court observed that "the question presented is not whether [the grantor] had good title and conveyed good title to the surface to [the grantee] and reserved or excepted to himself good title to the minerals," but was instead "[a]re the parties to the deed and those claiming under them bound, as between themselves, by the recitals and provisions of the deed?" *Id.* The Court answered in the affirmative and held the parties to the deed were so bound. *Id.* at 585. Therefore, any question as to whether the grantor held good title at the time of the conveyance was not relevant to the dispute between the parties to the deed (and their successors) about the effect of the deed's terms. *Id.*

In a similar way, the reservations or exceptions contained within a grantee's chain of title may estop the grantees to a deed from claiming those interests under their deeds, even if the reservations or exceptions recited in the deeds do not actually exist. *See XTO Energy*, 357 S.W.3d at 58–59 (holding appellees were estopped by deed from claiming mineral interest in their land

because deeds within their chain of title incorporated a description of the land saying it was reserved); *Angell*, 225 S.W.3d at 842 (holding appellant was estopped by deed from claiming sole tenancy in a tract of land because the deed through which she claimed an interest in the land recited (mistakenly) that partial interests in the tract were previously conveyed to others).

Champee Springs characterizes Teal Trading's argument against applying estoppel by deed as one that estoppel by deed does not apply to exceptions.[4] Champee Springs then argues that the non-access restriction was an "exception" because several of the deeds in the chain of title refer to the property as subject to "permitted exceptions." It also argues that the restriction "was in one sense a reservation of rights by [the original grantor]" because the restriction "was an interest that benefitted and was retained by the original grantor." Neither characterization of the non-access restriction in the Declaration is accurate.

The Declaration filed by Cop and containing the restrictions referenced by all the deeds in Teal Trading's chain of title, is "neither a lease nor an instrument of conveyance, and thus, cannot reserve an interest." *Farm & Ranch Invs., Ltd., v. Titan Operating, L.L.C.*, 369 S.W.3d 679, 682 (Tex. App.—Fort Worth 2012, pet. denied); *see Jackson v. McKenney*, 602 S.W.2d 124, 126 (Tex. Civ. App.—Eastland 1980, writ ref'd n.r.e.) ("[A] reservation or exception cannot be made in favor of a stranger *to the deed*.") (emphasis added) (citing *Joiner v. Sullivan*, 260 S.W.2d 439, 440 (Tex. Civ. App.—Texarkana 1953, writ ref'd)). In addition, each deed's recitation that the conveyance is "subject to" the Declaration "is not a clear intention to reserve or except an interest from the conveyance" of that deed. *Farm & Ranch Invs.*, 369 S.W.3d at 683; *see Freeman v. Southland Paper Mills, Inc.*, 573 S.W.2d 822, 823 (Tex. Civ. App.—Beaumont 1978, writ ref'd n.r.e.) ("The clause in the surface deed does not expressly except any portion of the conveyed land, but merely

---

[4] Nothing in Teal Trading's motions for summary judgment or its briefs suggests this argument.

makes the conveyance subject to any leases or other instruments affecting the land."). Estoppel by deed would apply in this case, if at all, because the "subject to" clause or language in each deed is a "recital," *see Angell*, 225 S.W.3d at 841, not because the reference to the Declaration created an exception or reservation. *See Farm & Ranch Invs.*, 369 S.W.3d at 682–83; *Freeman*, 573 S.W.2d at 823.

### *The Meaning of "subject to" in a Deed*

Champee Springs takes the position that, when a grantee takes property "subject to" certain deed restrictions of record, the grantee has acknowledged the validity and enforceability of the restrictions, and thus is estopped by deed from denying their validity and enforceability. Its argument runs directly contrary to this court's decision in *Stout v. Rhodes*, 373 S.W.2d 94 (Tex. Civ. App.—San Antonio 1963, writ ref'd n.r.e.). In that case, the appellee–grantee Rhodes purchased a lot next to the appellant–grantor Stout's home. *Id.* at 95. Rhodes's deed provided that it was "subject to the restrictions now in force against said property as shown by instruments duly recorded in the office of the County Clerk of Bexar County, Texas." *Id.* The relevant restriction provided "[s]aid property shall be used for private residence purposes only, including customary out-buildings, such as private stable, garage or servants quarters, and no part thereof shall be used for business purposes." *Id.* Rhodes began to build an apartment complex, which Stout sued to enjoin. *Id.* at 94. The jury found that the development of the lots in the vicinity of the parties' properties prior to the conveyance, in violation of the restrictions, was so great that it was no longer possible to provide appellant in any substantial degree with the benefits of the general building scheme, and the trial court denied the requested injunction. *Id.* at 94–95.

On appeal, this court rejected Stout's argument that Rhodes, because he took his property "subject to" the restriction, could not challenge the validity of the restriction based on violations of the restriction that occurred before he accepted the deed. *Id.* at 95. The court held:

> The "subject to" provision does not prevent Rhodes from claiming an abandonment of the restrictions prior to the 1957 deed to Rhodes. *Kokernot v. Caldwell*, Tex. Civ. App., 231 S.W.2d 528, states that those words mean "subordinate to," "subservient to," or "limited by." They are words of qualification and not of contract. 84 A.L.R.2d 780. They are, in our opinion, notice to and an acknowledgment by Rhodes that such restrictions are of record, but they are not in fact an acknowledgment of the 1957 validity of the restrictions.

*Id.* Although the *Stout* court does not mention "estoppel by deed," its holding squarely contradicts Champee Springs's argument that the grantees in Teal Trading's chain of title, when they accepted their deeds "subject to" the restrictions, acknowledged the validity and enforceability of the restrictions at the time of their deeds. If the "subject to" clauses do not acknowledge the validity and enforceability of the restrictions, then the grantees cannot be estopped from claiming the restrictions are not valid and enforceable. *See id.*

Champee Springs attacks *Stout* in numerous ways, arguing that *Stout* was wrong at the time it was decided; that, even if it were correctly decided at that time, this court has since implicitly repudiated it; and that we should now explicitly repudiate it because it has not been followed by other Texas courts. We disagree.

*Stout*'s holding that the "subject to" clause referring to property restrictions were only words of notice fits neatly within the larger framework of the enforcement of restrictive covenants. A grantee is only bound by those restrictive covenants running with the property of which he has actual or constructive notice. *Davis v. Huey*, 620 S.W.2d 561, 565–66 (Tex. 1981). If restrictions do not appear in the grantee's chain of title, she is not charged with constructive notice (at least by deed) of the existence of any restrictions. *Urban Renewal Agency of San Antonio v. Bridges Signs, Inc.*, 717 S.W.2d 701, 703 (Tex. App.—San Antonio 1986, writ ref'd n.r.e.) (emphasis omitted).

Champee Springs points out that only one other Texas court has followed the holding in *Stout*, *see Joe T. Garcia's Enters., Inc. v. Snadon*, 751 S.W.2d 914, 916 (Tex. App.—Dallas 1988,

writ denied), but this is not surprising. *Stout* and *Joe T. Garcia* appear to be the only two Texas cases considering whether a grantee, who takes a deed "subject to" certain restrictions, has acknowledged the restrictions are valid and enforceable. And in fact, Champee Springs is unable to cite any authority holding that a "subject to" clause referring to property restrictions constitutes an acknowledgment that the restrictions are valid and enforceable as restrictive covenants at the time of the conveyance.

Nevertheless, Champee Springs attempts to analogize this case to the Texas Supreme Court's decision in *Cockrell v. Texas Gulf Co.*, 299 S.W.2d 672 (Tex. 1956). In *Cockrell*, the Court considered whether a "subject to an existing lease" clause in a reservation in a mineral deed incorporated the terms of the lease into the reservation. *Id.* at 675. The Court held that the inclusion of a "subject to an existing lease" clause in a mineral deed "incorporated in the deed the leases on the 729.7 acres and defined the estate conveyed, and the nature, extent and character of such estate" and cited *Greene v. White*. *Id.* at 676 (citing *Greene*, 153 S.W.2d 575). The Court then stated:

> This clause was in the chain of title received by [the grantee] from [the grantor], and [the grantee] and its successors in title cannot disregard these provisions. The parties to the deed are bound by the terms of their contract and cannot repudiate them.

*Id.* (internal citations omitted). This language suggests that the Court concluded the grantees were estopped by deed from challenging the validity of the lease provision incorporated into the deed by the "subject to an existing lease" clause, although it never mentions estoppel by deed. *See id.*

However, the deed in *Cockrell* contained three different "subject to" clauses, and the Court recognized that each "subject to" clause might have a different purpose. *Id.* The Court recognized that one of the "subject to" clauses, because of its placement between the habendum and warranty clauses of the deed, could well be argued to have been intended only to protect the grantor on her warranty. *Id.* Therefore, the *Stout*'s holding that the "subject to" clause before it was notice and

acknowledgement that property restrictions were of record, but not an acknowledgement of their validity, was consistent with the Texas Supreme Court's recognition that a "subject to" clause may simply protect a grantor on her warranty. *Compare Cockrell*, 299 S.W.2d at 676, *with Stout*, 373 S.W.2d at 95.

The warranty-limiting purpose of a "subject to" clause that refers to property restrictions was well-explicated by the Arizona Supreme Court in *Smith v. Second Church of Christ, Scientist, Phoenix*, 351 P.2d 1104 (Ariz. 1960). In *Smith*, the Arizona Supreme Court held that "reference to restrictions in a 'subject to' clause will not, without more, make such restrictions applicable to the deeded property if, as a matter of fact, they are otherwise inapplicable." *Id.* at 1109. The court explained why a grantor would make such a reference to restrictions in a "subject to" clause, even if the terms of the restrictions do not encompass the property conveyed:

> When property is conveyed by warranty deeds . . . it is in the interest of the grantors that the conveyance be made subject to every restriction or encumbrance which not only does apply to such property but also *may* apply. The inclusion of restrictions in the "subject to" clause may thus express a wise precaution on the part of the grantor. It would indeed be foolhardy for a grantor who is delivering a warranty deed to fail to refer to a restriction which may at some time in the future be held to apply to his property, merely to avoid the criticism of excess wordiness. Thus, it is not unusual for conveyances to be made subject to all recorded covenants, easements and restrictions, without specific enumeration, and it would be inappropriate, to say the least, to infer restrictions because it may subsequently turn out that none then applied to the property.

*Id.* (internal citation omitted). *Smith*'s reasoning has been directly and indirectly relied on by several Texas courts of appeal. *See Sills v. Excel Servs., Inc.*, 617 S.W.2d 280, 284 (Tex. Civ. App.—Tyler 1981, no writ); *Wren Mortg. Co., Inc. v. Timber Lakes & Timber Ridge Ass'n, Inc.*, 612 S.W.2d 618, 621 (Tex. Civ. App.—Beaumont 1980, writ ref'd n.r.e.); *Wiley v. Schorr*, 594 S.W.2d 484, 488 (Tex. Civ. App.—San Antonio 1979, writ ref'd n.r.e.).

Champee Springs also argues *Stout* conflicts with two later decisions of this court.

In *Ski Masters of Tex., LLC v. Heinemeyer*, 269 S.W.3d 662 (Tex. App.—San Antonio 2008, no pet.), this court stated "[a] restrictive covenant is a contractual agreement between the seller and the purchaser of real property," *id.* at 668, which Champee Springs claims conflicts with *Stout*'s statement that the words "subject to" are "words of qualification and not of contract." *Stout*, 373 S.W.2d at 95. There is no conflict, as *Stout* was discussing the standard meaning of a "subject to" clause that refers to property restrictions, and *Ski Masters* only made a general statement about the nature of a restrictive covenant.

Champee Springs also emphasizes the fact that the *Ski Masters* court stated the appellant's tract was "unquestionably" subject to the restrictions in a deed in its chain of title. *Ski Masters*, 269 S.W.3d at 668. The issue in *Ski Masters* was "whether the [appellees], all of whom are outside the tract's chain of title, have standing to enforce those restrictions against the [appellant]." *Id.* To determine whether the appellees had standing, the court considered the appellant's substantive challenges to the enforcement of the restrictions as restrictive covenants. *Id.* at 668–73. Even though the appellant's tract was "unquestionably" subject to the restrictions in an earlier deed, the *Ski Masters* court did not summarily refuse to consider the appellant's substantive challenges to the restriction. *See id.* There is no conflict between *Stout* and *Ski Masters*.

In *Davis v. Canyon Creek Estates Homeowners Ass'n*, this court held "a landowner cannot rely on 'changed conditions' that have already occurred by the time he acquires the property" as a ground to void or modify a deed restriction. 350 S.W.3d 301, 309–10 (Tex. App.—San Antonio 2011, pet. denied). The grantee in *Stout* did not rely on "changed conditions" prior to the date of his deed as a defense to the enforcement of the restrictions, but instead on "substantial violations" prior to his purchase, *see* 373 S.W.2d at 95, which is a separate defense not subject to the rule articulated in *Davis*. *See Traeger v. Lorenz*, 749 S.W.2d 249, 250 (Tex. App.—San Antonio 1988,

no writ). We note that Teal Trading has not alleged that the contested non-access restriction is invalid due to "changed conditions."

*Stout v. Rhodes* is still good law, and thus in the ordinary case, a "subject to" clause referencing recorded deed restrictions is not an acknowledgment that the restrictions are valid and enforceable. *Stout*, 373 S.W.2d at 95; *Joe T. Garcia*, 751 S.W.2d at 916; *see Smith*, 351 P.2d at 1109. The context of the clause, however, should be considered. *See Cockrell*, 299 S.W.2d at 676.

*Application*

Having recognized that the meaning of a "subject to" clause is somewhat contextual, we will examine the "subject to" clauses contained in Teal Trading's chain of title.

The Cop–Luigs deed and Luigs–Bowman deed contain essentially identical "subject to" clauses:

> This Special Warranty Deed and the conveyance hereinabove set forth is executed by Grantor and accepted by Grantee SUBJECT TO the following to the extent that same are valid and existing and affect the PROPERTY, to-wit: All matters set forth in [exhibit identifying the location of, *inter alia*, the Declaration in county records] attached hereto and incorporated herein for all purposes.

Clearly, no estoppel by deed as to the validity of the non-access restriction arises from these deeds because the grantees only accepted the identified restrictions to the extent that they were "valid and existing."

The "subject to" clauses in the twin Bowman–Mallard warranty deeds appeared following the granting clause:

> SUBJECT, HOWEVER, TO the matter set forth in [exhibits identifying the location of, *inter alia*, the Declaration in county records] attached hereto and incorporated herein by reference (hereinafter collectively referred to as "Permitted Exceptions").
>
> TO HAVE AND TO HOLD the Property, subject to the aforesaid Permitted Exceptions, unto Grantee, Grantee's successors and assigns, forever; and Grantor does hereby bind Grantor and

> Grantor's successors to WARRANT AND FOREVER DEFEND the Property, subject to the aforesaid Permitted Exceptions, unto Grantee, Grantee's successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof, by, through or under Grantor, but not otherwise.

The language and placement of the "subject to" clause in the Mallard–BTEX warranty deed executed on the same day is identical in substance to those deeds. These "subject to" clauses do not show that the grantees acknowledged the validity of the restrictions. *Stout*, 373 S.W.2d at 95; *Joe T. Garcia*, 751 S.W.2d at 916; *see Smith*, 351 P.2d at 1109. Additionally, the "subject to" clauses were placed between the deeds' granting and warranty clauses and were also referenced by the deeds' warranty clauses. This context indicates the "subject to" clauses were inserted to protect the grantors on their warranty. *See Cockrell*, 299 S.W.2d at 676; *Smith*, 351 P.2d at 1109.

The exhibit attached to the deed of trust securing BTEX's note identified the Cop Declaration and stated: "[t]he following items are Permitted Exceptions to the extent they are valid and existing and affect the mortgaged property." No estoppel by deed as to the validity and enforceability of the restrictions could arise from the deed of trust, just as in the Cop–Luigs and Luigs–Bowman deeds.

None of the instruments by which Teal Trading acquired BTEX's interest appear to reference the restrictions in the Declaration, much less acknowledge the validity and enforceability of the restriction.

### *Conclusion*

Because none of the deeds within the chain of title from Cop to Teal Trading acknowledge the validity and enforceability of the non-access restriction, Champee Springs did not show as a matter of law that Teal Trading is estopped by deed from challenging the non-access restriction's

validity and enforceability. The trial court erred by granting Champee Springs's motion for summary judgment.[5]

## TEAL TRADING'S MOTIONS FOR SUMMARY JUDGMENT

Teal Trading's motion and supplemental motion for summary judgment sought a declaration that the non-access restriction was an invalid easement, that members of Champee Springs had waived the restriction's enforcement, and that the restriction was void as against public policy.

### *Is the Restriction an Invalid Easement?*

Teal Trading argues the non-access restriction is not a valid easement in fact or law because an easement is the right to *use* a servient estate by a dominant estate, and because Cop only purported to retain the right to *prohibit use*, there is no valid easement. That argument overlooks the well-established nature of negative reciprocal easements, restrictive covenants, or equitable servitudes restricting the use of property. *See, e.g., Evans v. Pollock*, 796 S.W.2d 465 (Tex. 1990); *Curlee v. Walker*, 244 S.W. 497 (Tex. 1922); RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 1.3(3) ("A 'restrictive covenant' is a negative covenant that limits permissible uses of land. A 'negative easement' is a restrictive covenant."); *see generally* TEX. PROP. CODE ANN., tit. 11 ("Restrictive Covenants") (West 2007 & Supp. 2013).

Teal Trading did not meet its summary judgment burden to show the restriction was not a valid easement.

---

[5] We have assumed *arguendo* that, if a deed within Teal Trading's chain of title had actually contained a recital acknowledging the restrictions in the Declaration were valid and enforceable, Teal Trading could be estopped from challenging the validity of the restrictions prior to the date of that deed. We have found no authority applying estoppel by deed to estop a challenge to deed restrictions or restrictive covenants, and this opinion should not be read as implicit support for that proposition.

*If the Restriction Was a Valid Easement, Was It Terminated by Merger?*

Teal Trading argues that, because "Cop already owned the entire tract when he purported to create an easement . . . any purported easement would therefore merge into the fee simple estate." If any valid and enforceable negative reciprocal easement or restrictive covenant arose from the non-access restriction, it happened when Cop sold the first tract of the burdened property, not when he filed the Declaration. *See Ski Masters*, 269 S.W.3d at 669; *Lehmann v. Wallace*, 510 S.W.2d 675, 680–81 (Tex. Civ. App.—San Antonio 1974, writ ref'd n.r.e.). Termination by merger could only happen thereafter if all the burdened and benefitted properties came back into the ownership of a single entity. *See* RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 7.5 & cmt. c. (1998). There is no evidence that such an event occurred in this case.

Teal Trading did not meet its summary judgment burden to show the restriction, if it was a valid easement, was terminated by merger.

*Did Members of Champee Springs Waive the Restriction in a Replat and Become Estopped from Enforcing It?*

Teal Trading argues that the signatories on the 1999 replat, some of whose interests are represented by Champee Springs, waived enforcement of the non-access restriction and are estopped from enforcing it. The 1999 replat removed the Privilege Creek tract from Champee Springs Ranches. Teal Trading's argument is based on the following language within the 1999 replat: "RESERVE STRIPS/NONACCESS EASEMENTS ARE NOT ALLOWED UNLESS THEY ARE DEDICATED TO THE COUNTY."

Viewed in the light most favorable to nonmovant Champee Springs, we hold that the alleged "waiver" language does not show that the signees of the replat intended to waive the already existing non-access restriction burdening their properties as a matter of law. That language appears in a section titled "General Notes," setting forth various utility easements. It does not refer

to the Cop Declaration containing the non-access restriction, and the alleged "waiver" language does not purport to renounce, release, or cancel the already recorded non-access restriction.

We hold Teal Trading did not conclusively establish that the signatories to the 1999 replat intended to waive enforcement of the non-access restriction.

### *Is the Restriction Void as Against Public Policy?*

Teal Trading argues the non-access restriction is void because it is against public policy. Texas law recognizes the right of parties to contract with relation to property as they see fit, provided they do not contravene public policy and their contracts are not otherwise illegal. *Curlee*, 244 S.W. at 498; *Co-operative Vineyards Co. v. Ft. Stockton Irrigated Lands Co.*, 158 S.W. 1191, 1193 (Tex. Civ. App.—El Paso 1913, writ ref'd) ("The right of an owner of land upon sale thereof to put such restrictions in his deed as shall not be against public policy is unquestioned in this state."). Teal Trading contends that the subdivision regulations of Kerr County and Kendall County are a source of public policy and that the non-access restriction violates them. We assume *arguendo* that a property restriction created in violation of a county's subdivision regulations may be void as against public policy.

The Kendall County regulation relied on by Teal Trading states: "[t]here shall be no reserve (or spite) strips controlling the only access to land adjacent to roads dedicated or intended to be dedicated for public use." Kendall County, Tex., Development Rules and Regulations § 300.1000.3 (Nov. 8, 2010). Teal Trading does not explain how the non-access restriction falls within this prohibition.

The Kendall County regulation appears to prohibit the situation confronted by this court in *De Castillo v. Borgo*, 693 S.W.2d 547 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.). In that case, a developer reserved a one-foot strip of land along a road dedicated to public use, thus prohibiting access to any person owning land along the south side of the road. *Id.* at 549. That is

not the situation here. The non-access restriction established by Cop does not run alongside any roadway dedicated or intended to be dedicated for public use and thus does not appear to fall within Kendall County's prohibition.

The Kerr County subdivision regulation relied on by Teal Trading states: "[t]here shall be no reserve strips controlling the access to land dedicated or intended to be dedicated for public use or controlling access to any portion of the subdivision." Kerr County, Tex., Subdivision Rules & Regulations § 5.01B (Nov. 26, 2007). Although the latter part of the regulation may prohibit the non-access restriction, Teal Trading did not show in its motion or briefing whether the non-access restriction actually falls within the prohibition.

Moreover, the Kerr County regulation Teal Trading relies on was different at the time that Cop signed and filed the Declaration and began to sell lots. The non-access restriction, if it is a valid and enforceable covenant, is a property interest, and Teal Trading's reliance on county regulations effective after the creation of the restriction in order to invalidate it raises issues of eminent domain. *City of Heath v. Duncan*, 152 S.W.3d 147, 152 (Tex. App.—Dallas 2004, pet. denied); *City of Houston v. McCarthy*, 464 S.W.2d 381, 386 (Tex. Civ. App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.); *cf. Farmer v. Thompson*, 289 S.W.2d 351, 355 (Tex. Civ. App.—Fort Worth 1956, writ ref'd n.r.e.) ("The power of a city to zone does not override covenants in existence at the time the zoning ordinance is passed."). We therefore measure the restriction against the regulation in existence at the time Cop made the Declaration and began selling lots.

The regulation prior to the Declaration stated: "[t]here shall be no reserve strips controlling the only access to land dedicated or intended to be dedicated to public use." Kerr County, Tex., Subdivision Rules & Regulations § 5.01B (May 11, 1998). This version of the prohibition appears to apply to the situation in *De Castillo* and not to the situation created by the non-access restriction

in this case. *See* 693 S.W.2d 547. In addition, Teal Trading does not contend that the Privilege

Creek tract encumbered by the restriction is "dedicated or intended to be dedicated to public use."

Teal Trading did not meet its summary judgment burden to show the restriction violates

public policy.[6]

### *Is the Restriction Void as an Unreasonable Restraint Against Alienation?*

Teal Trading argues the non-access restriction is void as an unreasonable restraint against

alienation. The Texas Supreme Court has used the definitions from the First Restatement of

Property to identify whether an instrument contains a restraint on alienation. *Sonny Arnold, Inc. v.*

*Sentry Sav. Ass'n*, 633 S.W.2d 811, 813–15 (Tex. 1982). Under the First Restatement, "a restraint

on alienation" is an attempt by an otherwise effective conveyance to cause a later conveyance:

1. to be void (disabling restraint);
2. to impose contractual liability on the one who makes the later conveyance when such liability results from a breach of an agreement not to convey (promissory restraint); or
3. to terminate or subject to termination all or a part of the property interest conveyed (forfeiture restraint).

*Id.* at 813 & n.2; RESTATEMENT (FIRST) OF PROPERTY § 404. Although Teal Trading identifies the

three categories of restraints against alienation accepted by the Texas Supreme Court, it does not

argue that the restriction falls within any of the categories. It simply states that the restriction

"entirely prohibits Teal [Trading] from selling a parcel of its property that straddles the imaginary

---

[6] In its brief, Teal Trading presents an additional public policy argument:

> the Non-Access [Restriction] creates a 660 acre island in the eastern corner of Kerr County. Kerr County cannot provide any governmental services to the island without driving almost to Boerne, and then down Ranger Creek Road and Turkey Knob Road. Accordingly, the Non-Access [Restriction] effectively prevents Kerr County from providing fire, emergency, or police services to the isolated tract. Moreover it prevents Kerr County from exercising its own transportation planning.

However, Teal Trading did not argue this point in its motions for summary judgment, nor did it present evidence about the impact of non-access restriction on Kerr County's provision of public services or Kerr County's transportation planning. Thus, we do not consider this argument.

line." The restriction does not purport to prohibit Teal from selling any part of the Privilege Creek Tract, and we hold the restriction does not, on its face, fall within any of the recognized categories of restraints on alienation. *See Sonny Arnold*, 633 S.W.2d at 813-15.

Teal Trading also argues that the restriction "mandates that should Teal wish to sell a part of its land, that it must divide its entire tract along the imaginary line" and it "would have a negative effect on property values in general." Teal Trading provided no evidence that market values would be negatively affected by the restriction.

We note that, to the extent that the non-access restriction may operate as a restraint on alienation, it does so as an indirect restraint. *See Mattern v. Herzog*, 367 S.W.2d 312, 319–20 (Tex. 1963); RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 3.5 (1998). Texas law does not favor declaring indirect restraints on alienation as unreasonable and against public policy. *See Mattern*, 367 S.W.2d at 320 ("Before the [first purchase] option may be stricken it must appear that it bears some relationship to the evil which the rules governing undesirable restraints are designed to prevent."); RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 3.5 (1998) (providing that a servitude that indirectly restrains alienation is valid unless it lacks a rational justification). The rule against restraints on alienation should not be mechanically applied to indirect restraints lest it "inhibit the employment of desirable contractual . . . provisions" and "unnecessarily circumscribe the freedom of contract." *Mattern*, 367 S.W.2d at 320; *see Munson v. Milton*, 948 S.W.2d 813, 817 (Tex. App.—San Antonio 1997, pet. denied) ("Property owners are permitted to create binding restrictions on the use of their property . . . and restrictions limiting the use of property to residential purposes and prohibiting business use are not unenforceable restraints on alienation.").

Teal Trading did not meet its summary judgment burden to show the restriction was an unreasonable restraint on alienation.

***Is the Restriction Void as an Unreasonable Restraint on Use?***

Teal Trading argues that the non-access restriction is an unreasonable restraint on its use of the Privilege Creek tract. Restrictions that amount to a prohibition of the use of property are void. *Baker v. Henderson*, 153 S.W.2d 465, 471 (Tex. 1941). Of course, public policy also recognizes that parties may contract with regard to their property as they see fit. *Davis v. Huey*, 620 S.W.2d 561, 565 (Tex. 1981); *see, e.g., Moore v. Smith*, 443 S.W.2d 552, 556 (Tex. 1969) ("We are not prepared to hold that restrictions which limit the use of property to residential purposes permanently or indefinitely are void and unenforceable per se.").

Teal Trading attempts to analogize its situation to that in *Baker v. Henderson*, 153 S.W.2d 465 (Tex. 1941). In *Baker*, the Texas Supreme Court reviewed the trial court's construction of an ambiguous restrictive covenant governing set-back lines in a residential subdivision. *Id.* at 470–71. Depending on the covenant's construction, the appellees would have been prohibited from building a home on their lot, rendering their land utterly valueless. *Id.* at 471. The Court concluded the only reasonable construction was one that did not result in the covenant being void as a prohibition of use. *Id.*

Teal Trading's situation is far removed from the one in *Henderson*. The restriction, if valid and enforceable, does not prohibit Teal Trading's use of the Privilege Creek tract, but only limits how it may use it. *See Gunnels v. N. Woodland Hills Cmty. Ass'n*, 563 S.W.2d 334 (Tex. Civ. App.—Houston [1st Dist.] 1978, no writ) (holding restrictive covenant prohibiting property owners from erecting antennae on their houses or buildings other than those for receiving normal television signals was not an unreasonable restriction on use). Teal Trading did not present evidence showing that the restriction so severely limited its use of the property that the property was rendered valueless.

Teal Trading did not meet its summary judgment burden to show the restriction was an unreasonable restraint on use.

*Conclusion*

Teal Trading failed to show its entitlement to summary judgment that the non-access restriction was an invalid easement, that members of Champee Springs had waived the restriction's enforcement, or that the restriction was void as against public policy. The trial court did not err by denying its motions for summary judgment.

CHAMPEE SPRINGS'S AWARD OF ATTORNEY'S FEES

The trial court awarded Champee Springs its attorney's fees. *See* TEX. PROP. CODE ANN. § 5.006(a) (West 2007) ("In an action based on breach of a restrictive covenant pertaining to real property, the court shall allow to a prevailing party who asserted the action reasonable attorney's fees in addition to the party's costs and claim."). Because we reverse the judgment rendered in favor of Champee Springs, we also reverse the award of attorney's fees to enable the trial court to reconsider the fees after the cause is resolved on remand. *See AAA Free Move Ministorage, LLC v. OIS Invs., Inc.*, No. 04-11-00849-CV, 2013 WL 5812922, at *7 (Tex. App.—San Antonio Oct. 30, 2013, pet. filed) (en banc).

CONCLUSION

We conclude neither party showed they were entitled to summary judgment as a matter of law. Because Teal Trading is not estopped by deed from challenging the validity of the non-access restriction, we reverse the trial court's judgment and remand the cause for further proceedings consistent with this opinion.

Luz Elena D. Chapa, Justice