

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-17-00372-CV

Layla Claire Martin **OSLEY** and Milton J. Flick, Trustee,
Appellants

v.

Doris Jacqueline **NAYLOR**,
Appellee

From the 343rd Judicial District Court, McMullen County, Texas
Trial Court No. M-14-0035-CV-C-1
Honorable Starr Boldrick Bauer, Judge Presiding

Opinion by:  Patricia O. Alvarez, Justice

Sitting:  Marialyn Barnard, Justice
Patricia O. Alvarez, Justice
Irene Rios, Justice

Delivered and Filed:  August 22, 2018

AFFIRMED

This is an oil and gas deed construction case.  Appellants Layla Claire Martin Osley and

Milton J. Flick (collectively Osley) contend the deed conveyed only the portion of the grantor's

interest in the NPRIs for wells produced from two conveyed tracts, not on all the lands to which

the NPRIs originally applied.  The trial court disagreed with Osley's view and granted Naylor's

motion for summary judgment; this appeal ensued.  Because the plain language of the deed shows

the NPRIs apply to all the lands, we affirm the trial court's judgment.

## BACKGROUND

The NPRIs at issue here trace their origins from documents generated by Osley's ancestors to a 1990 Guardian's Deed from Osley to Appellee Doris Jacqueline Naylor. We briefly review the relevant facts.

### A. Florence Martin NPRI

Osley's great-grandmother Florence Martin divided 2,440 acres of land into three tracts of 812 acres each.[1] In her will, Florence devised one tract each in fee simple to three of her descendants: Osley's grandfather and two others. Florence reserved an undivided, nonparticipating 1/8 royalty interest on the entire 2,440 acres with the undivided NPRI (the Florence Martin NPRI) to be owned jointly by her three devisees, including Osley's grandfather. When Osley's grandfather died, he devised his 812-acre tract and his interest in the Florence Martin NPRI to his wife Jeanette (Osley's grandmother).

### B. Jeanette Martin Term NPRI

When Jeanette died, she owned a 1/3 interest in the Florence Martin NPRI; she also owned the 812-acre tract, and an additional 238 acres, for a total of 1,050 acres of land. In 1988, to settle a contest to Jeanette's will, the parties executed a partition deed. Its "THIRD" provision granted Osley two tracts of land: Tract D, 101 acres; and Tract E, 112 acres. Its "SEVENTH" provision created a twenty-year term 1/8 NPRI on all of Jeanette's 1,050 acres (the Jeanette Martin NPRI). Osley received "an equal undivided one-eighth (1/8) interest in" the Jeanette Martin NPRI. Tract D, which had been part of Florence's 2,440 acres, was burdened by the Florence Martin NPRI and the Jeanette Martin NPRI. Tract E, which had not been part of Florence's 2,440 acres, was not burdened by the Florence Martin NPRI but was burdened by the Jeanette Martin NPRI.

---

[1] The acreage numbers are approximate. A five-acre homestead is included in the total acreage calculation.

**C.    Guardian's Deed**

In 1990, while Osley was still a minor, her guardian executed the deed at issue in this appeal: the Guardian's Deed.  The Guardian's Deed conveyed to Naylor some of Osley's property and interests.  The parties agree that Osley conveyed the following:

- Tracts D and E (the Property),
- less a reservation of one half of the mineral estate for the Property,
- one half of Osley's interest in the Florence Martin NPRI, and
- one half of Osley's interest in the Jeanette Martin NPRI.

The parties disagree on what lands the NPRIs apply to.

Osley argues she conveyed one half of her interest in the NPRIs for wells producing from *only* the Property (Tracts D and E).

Naylor argues Osley conveyed one half of her *entire* interest in the NPRIs, meaning for wells produced *anywhere* on the Florence Martin 2,440 acres or the Jeanette Martin 1,050 acres.[2]

Osley and Naylor filed competing motions for partial summary judgment.  The trial court denied Osley's motion and granted Naylor's motion.  The trial court declared, in effect, that the NPRIs are not limited to wells producing only from the Property.  The trial court's severance order made its summary judgment for Naylor final, and Osley appeals.

**D.    Standard of Review**

A trial court may render summary judgment when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues [presented]."  TEX. R. CIV. P. 166a(c); *accord Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017); *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003).  We review a trial court's summary judgment de novo.  *Lightning Oil*, 520 S.W.3d at

---

[2] As previously noted, 812 of Jeanette Martin's 1,050 acres were part of Florence Martin's 2,440 acres.

45; *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). "When both parties move for summary judgment and the trial court grants one motion and denies the other, we review all the summary judgment evidence, determine all issues presented, and render the judgment the trial court should have." *Merriman*, 407 S.W.3d at 248; *accord Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

**E.        Deed Construction**

"The construction of an unambiguous deed is a question of law for the court." *Wenske v. Ealy*, 521 S.W.3d 791, 794 (Tex. 2017) (quoting *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991)). "The primary duty of a court when construing such a deed is to ascertain the intent of the parties from all of the language in the deed by a fundamental rule of construction known as the 'four corners' rule." *Luckel*, 819 S.W.2d at 461; *accord Wenske*, 521 S.W.3d at 794. We must "(1) . . . focus on the intent of the parties, expressed by the language within the four corners of the deed, and (2) harmoniz[e] all parts of an instrument, even if particular parts appear contradictory or inconsistent." *Wenske*, 521 S.W.3d at 795; *see Altman v. Blake*, 712 S.W.2d 117, 118 (Tex. 1986).

In cases where "we can ascertain the parties' intent . . . by careful examination of the entire deed, [a]pplying default rules or other mechanical rules of construction to determine the deed's meaning is . . . both unnecessary and improper." *Wenske*, 521 S.W.3d at 796 (citation omitted); *accord Hysaw v. Dawkins*, 483 S.W.3d 1, 13 (Tex. 2016) (reiterating that a proper analysis is "a holistic approach aimed at ascertaining intent from all words and all parts of the conveying instrument"). "If [a deed] is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and [we] will construe the [deed] as a matter of law." *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *accord Wenske*, 521 S.W.3d at 794.

## ANALYSIS

The parties' dispute centers on the geographic scope of the Florence Martin and Jeanette Martin NPRIs based on some limiting language in the paragraphs conveying the NPRIs.

### A.    Osley's Argument

Osley argues the "insofar as" language in the Guardian's Deed limits the grant in each NPRI to the geographic limits of the Property—the 213 acres.  She points to the deed's nine instances of "insofar as" language as evidence that the deed's intent is to limit the geographic bounds of the NPRIs to the Property.  Osley contends that under a four corners analysis, "[t]he only reasonable result . . . [is] that the 'insofar' clause does not limit the royalties outstanding but reaches up to the front part of [the granting language] and limits the grant in each NPRI to the Property."

### B.    Naylor's Argument

Naylor argues Osley conveyed one half of whatever interest she (Osley) owned in the Jeanette Martin and Florence Martin NPRIs, and the interest conveyed applies to all 1,050 acres of the Jeanette Martin lands and all 2,440 acres of the Florence Martin lands.  Naylor insists the deed's plain language shows the "insofar as" clauses apply only to the reversionary rights, and the clauses appropriately acknowledge that the grantor does not warrant title against preexisting burdens.

### C.    NPRI Grants

After the Guardian's Deed conveys the two tracts of land, it conveys interests in the NPRIs in two separate paragraphs.

> For the same consideration recited above, Grantor does further grant and convey unto Grantee, the following:
>
> (1) An undivided one-half (1/2) interest in and to all of Grantor's interest in and to the non-participating term royalty interest in all of the oil, gas, . . . and all other

minerals . . . that may be produced from 1050.55 acres of land more fully described in the Partition Deed and Agreement and awarded to Grantor under the terms and provisions of the Order of Partition and Paragraph SEVENTH of the [1988] Partition Deed and Agreement, together with one-half (l/2) interest in and to Grantor's reversionary rights and interests therein *insofar and only insofar as* Grantor's reversionary rights and interest pertain to the Property; the interest hereby granted and conveyed to Grantee, however, shall bear and be reduced by its proportionate one-half (1/2) part of (i) the royalties committed to the non-participating term royalty pooling agreement created under the order of Partition and Paragraph SEVENTH of the [1988] Partition Deed and Agreement, *insofar only as* the same covers and pertains to the Property, (ii) the royalty interest which was not partitioned and divided among the parties to the [1972] Partition Deed . . . , *insofar only as* the same covers and pertains to the Property, and (iii) any outstanding interest in the oil, gas and mineral estate in the Property, if any there be.

(2) An undivided one-half (1/2) interest in and to all of Grantor's interest in and to a non-participating royalty interest equal to an undivided one-eighth (1/8) of all oil, gas, . . . and all other minerals . . . in and to all of the lands partitioned in the Estate of Floren[c]e Martin . . . ; the interest hereby granted and conveyed to Grantee, however, shall bear and be reduced by its proportionate one-half (1/2) part of (i) the royalties committed to the non-participating term royalty pooling agreement created under the order of Partition and Paragraph SEVENTH of the [1988] Partition Deed and Agreement, *insofar only as* the same covers and pertains to the Property, (ii) the royalty interest which was not partitioned and divided among the parties to the [1972] Partition Deed . . . , *insofar only as* the same covers and pertains to the Property, and (iii) any outstanding interest in the oil, gas and mineral estate in the Property, if any there be. (emphasis added).

### D.     Jeanette Martin NPRI Grant

The Guardian's Deed addresses the Jeanette Martin term NPRI in paragraph (1).

Paragraph (1) consists of three main components: a term NPRI grant, a reversion grant, and burdens imposed. The two grants appear first, terminated by a semicolon; the burdens follow, terminated by a period. *See Criswell v. European Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990) (recognizing that while "the words contained in the instrument, and not the punctuation, should be the controlling guide in construing the instrument, [p]unctuation aids in construing the words used in the instrument," and a semicolon may indicate a phrase is intended

to have independent significance (citation omitted)). We begin by reviewing the two grants, starting with the term NPRI grant.

### 1. Paragraph (1)

The geographic scope of paragraph (1)'s grant of an "undivided one-half (1/2) interest in and to all of [Osley]'s interest in and to the non-participating term royalty interest in all of the [minerals] . . . that may be produced from 1050.55 acres of land" is certain and definite: it covers all 1,050 acres. *See Coker*, 650 S.W.2d at 393; *see also Wenske*, 521 S.W.3d at 794.

The remaining question for paragraph (1) is whether—as Osley argues—the insofar as language "reaches up to the front part of [the granting language] and limits the grant in each NPRI to the Property." The deed's plain language unambiguously demonstrates that it does not.

### 2. Paragraph (1) Term NPRI, Reversion Grants

The first component of paragraph (1) grants Naylor one half of Osley's interest in the Jeanette Martin term NPRI. The second component grants a reversion. Separating the term NPRI grant from the reversion grant by the phrase "together with," paragraph (1) grants Naylor one half of Osley's reversionary interest in the Jeanette Martin NPRI, but "insofar and only insofar as Grantor's reversionary rights and interest pertain to the Property."

The "together with" language is a logical break; it indicates that what follows—the reversionary interest—is different from what was just recited—the one-half interest in the term NPRI. The "insofar and only insofar as Grantor's reversionary rights and interest pertain to the Property" language limits the granted reversionary interest to the Property. Considering this phrase in the context of the term NPRI grant for the full 1,050 acres and the reversionary interest limited to the Property, the meanings are plain and complete. Given the two related but separate types of interests—a term NPRI and a reversion—the deed's word choices and sentence structure

yield a certain meaning: the "insofar as" language refers to the reversionary interest, not the term NPRI. *See Coker*, 650 S.W.2d at 393; *see also Wenske*, 521 S.W.3d at 794.

   *3. Paragraph (1) Burdens*

  The third component imposes burdens; it requires Naylor's interest to "bear and be reduced by its proportionate one-half (1/2) part of" three preexisting burdens:

> (i) the royalties committed to the nonparticipating term royalty pooling agreement . . . insofar only as the same covers and pertains to the Property, (ii) the royalty interest which was not partitioned and divided among the parties to the [1972] Partition Deed . . . , insofar only as the same covers and pertains to the Property, and (iii) any outstanding interest in the oil, gas and mineral estate in the Property, if any there be.

The words used and the sentence structure show that each of these provisions (i.e., (i), (ii), and (iii)) has limiting language that operates within the confines of its separate provision.

  Provisions (i) and (ii) reduce Naylor's interest in the Jeanette Martin term NPRI in accordance with the pooling agreement and any unpartitioned royalty interest "insofar only as [the pooling agreement or the unpartitioned royalty] covers and pertains to the Property."

  Similarly, provision (iii) reduces Naylor's interest in the Jeanette Martin term NPRI by "any outstanding interest in the oil, gas and mineral estate in the Property."

  In each Roman numeral provision, the words used, the sentence structure, and the limiting language placement all indicate the limitations apply to the burdens, not to the geographic scope of the term NPRI. *See Wenske*, 521 S.W.3d at 794; *Criswell*, 792 S.W.2d at 948.

   *4. Paragraph (1)'s Limiting Language Reach*

  Considering the three components of paragraph (1) separately, and paragraph (1) as a whole, we note that nothing in the words used, the sentence structure, or the paragraph's structure indicates that the limiting language reduces the geographic scope of the Jeanette Martin term NPRI grant. We necessarily conclude that the limiting language in each component applies within its

respective component; the limiting language does not reach up to the beginning of paragraph (1) to restrict Naylor's interest in the term NPRI to only those wells produced from the Property.

## E. Florence Martin NPRI Grant

The Guardian's Deed addresses the Florence Martin NPRI in paragraph (2).

Paragraph (2) has two main components: a perpetual NPRI grant, and burdens imposed. Like paragraph (1), the NPRI grant appears first, terminated by a semicolon. *See Criswell*, 792 S.W.2d at 948. The geographic scope of paragraph (2)'s grant of an "undivided one-half (1/2) interest in and to all of [Osley]'s interest in and to a non-participating royalty interest . . . in and to all of the lands partitioned in the Estate of Floren[c]e Martin, Deceased" is also certain and definite: it covers all 2,440 acres of the Florence Martin lands. *See Coker*, 650 S.W.2d at 393; *see also Wenske*, 521 S.W.3d at 794.

The remaining question for paragraph (2) is whether—as Osley argues—the insofar as language limits the Florence Martin NPRI grant to only those wells produced from the Property.

### 1. Paragraph (2) NPRI Grant

The first component of paragraph (2) grants Naylor one half of Osley's interest in the Florence Martin NPRI; the grant expressly covers all the Florence Martin lands—the entire 2,440 acres.

### 2. Paragraph (2) Burdens

Using identical language as paragraph (1), the second component of paragraph (2) imposes burdens; it requires Naylor's interest in the Florence Martin NPRI to "bear and be reduced by its proportionate one-half (1/2) part of" three preexisting burdens:

> (i) the royalties committed to the non-participating term royalty pooling agreement . . . insofar only as the same covers and pertains to the Property, (ii) the royalty interest which was not partitioned and divided among the parties to the [1972] Partition Deed . . . , insofar only as the same covers and pertains to the Property,

and (iii) any outstanding interest in the oil, gas and mineral estate in the Property, if any there be.

The words used and the sentence structure show that each of these provisions (i.e., (i), (ii), and (iii)) operate on the Florence Martin NPRI just as the identical provisions in paragraph (1) operated on the Jeanette Martin term NPRI. For each of paragraph (2)'s Roman numeral provisions, the words used, the sentence structure, and the limiting language placement all indicate the limitations apply to the burdens, not to the geographic scope of the NPRI.

### 3. *Paragraph (1)'s Limiting Language Reach*

Examining the two components of paragraph (2) separately and paragraph (2) as a whole, we note that nothing in the words used, the sentence structure, or the paragraph's structure indicates that the limiting language reduces the geographic scope of the Florence Martin NPRI grant to the Property. We necessarily conclude that the limiting language in paragraph (2)'s second component applies only within the second component; the limiting language does not reach up to the beginning of paragraph (2) to restrict Naylor's interest in the NPRI to only those wells produced from the Property.

### F. Subject-To Provision

Towards its end, the Guardian's Deed includes this provision:

This conveyance is made and accepted subject to the following:

(a) The terms and provisions of the non-participating term royalty pooling agreement created under the Order of Partition and Paragraph SEVENTH of the Partition Deed and Agreement.

(b) All presently valid and subsisting (i) oil, gas and/or mineral or mining leases covering the Property, or any, portion thereof, and appearing of record in the office of the County Clerk of McMullen County, Texas, (ii) rights-of-way and easements covering the Property, or any portion thereof, and appearing of record in the office of the County Clerk of McMullen County, Texas, and (iii) visible and apparent easements affecting the Property, or any portion thereof, the existence of which do not appear of record.

(c) The terms, conditions and provisions of the Order of Partition and the Partition Deed and Agreement to the extent such terms, conditions and provisions apply to Property hereby conveyed.

(d) The terms, conditions and provisions of the Partition Deed between Hazel Marlin Martin, et al, and J.E. Martin, et al, dated May 2, 1972, and recorded in Vol 111, 119, Page 260 of the Deed Records of McMullen County, Texas, to the extent such terms, conditions and provisions apply to the Property hereby conveyed.

We agree with Osley that the subject-to provision applies to the entire conveyance and is intended to protect Osley from title warranty breaches. *See Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n*, 432 S.W.3d 381, 391, 393 (Tex. App.—San Antonio 2014, pet. denied).

But we disagree with Osley's assertion that "in limiting those warranty protections to [the Property], the subject-to clause unmistakably expresses the intention to limit the NPRI interests conveyed to [the Property]."

Subparagraphs (a)–(d) put Naylor on notice of restrictions or encumbrances that do or *may* apply. *See id.* at 391 (quoting *Smith v. Second Church of Christ, Scientist, Phoenix*, 351 P.2d 1104, 1109 (Ariz. 1960) ("[I]t is in the interest of the grantors that the conveyance be made subject to every restriction or encumbrance which not only does apply to such property but also *may* apply.")). Nothing in subparagraphs (a)–(d) expressly or implicitly overrides the geographic scope for the NPRI interests that were specifically stated in the granting language. The plain language of the subject-to provision does not support Osley's position. *See Wenske*, 521 S.W.3d at 794; *Hysaw*, 483 S.W.3d at 13.

## G.      Construing the Deed as a Whole

We have reviewed the Guardian's Deed in its entirety including the initial definitions and declarations, the grants for the two tracts, the grant for the Jeanette Martin term NPRI, the grant for the Florence Martin NPRI, the grant for the rights-of-way and easements, the mineral estate

reservations, future lease requirements, the subject-to provision, the warranties, the consideration, and the other provisions. *See Wenske*, 521 S.W.3d at 795; *Hysaw*, 483 S.W.3d at 13. We have examined paragraphs (1) and (2) carefully, and we construe them in the context of the Guardian's Deed as a whole. *See Wenske*, 521 S.W.3d at 794; *Hysaw*, 483 S.W.3d at 13.

We conclude there is only one reasonable interpretation for the NPRI grants: Naylor's interest in the Jeanette Martin term NPRI includes all of the 1,050 acres, and her interest in the Florence Martin NPRI includes all of the 2,440 acres. Because we have been able to ascertain the parties' intent from the deed's plain language, we do not consider parol evidence or resort to rules of construction. *See Wenske*, 521 S.W.3d at 794, 795–96; *Luckel*, 819 S.W.2d at 461.

## OTHER ISSUES

Osley argues that the trial court erred by refusing to rule on her objections to Naylor's summary judgment evidence. Because we do not consider the objected-to evidence, we need not address this point. *See* TEX. R. APP. P. 47.1; *Lance v. Robinson*, 543 S.W.3d 723, 740 (Tex. 2018) ("Rule 47.1 requires only that the court of appeals address issues necessary to dispose of the appeal.").

Osley also asks that if this court affirms the trial court's judgment, we reform the judgment to "track[] the precise rights and obligations set forth in the Guardian Deed." But Osley has not shown that she preserved her complaint for appellate review by bringing this matter to the trial court's attention, *contra* TEX. R. APP. P. 33.1(a); *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 516 (Tex. 2015) (referring to "our well-established error-preservation rules, which preclude a party from seeking appellate review of an issue that the party did not properly raise in the trial court"), and she failed to provide any citations to the record or authorities to support her point, *contra* TEX. R. APP. P. 38.1(i); *Gonzalez v. VATR Const. LLC*, 418 S.W.3d 777, 784 (Tex. App.—Dallas 2013, no pet.) ("[A] party asserting error on appeal still must put forth

some specific argument and analysis showing that the record and the law support [her] contention."). For her complaint about the trial court's alleged technical errors in its judgment, Osley has presented nothing for appellate review. *See Gonzalez*, 418 S.W.3d at 784.

## CONCLUSION

We have read the entire Guardian's Deed, examined it closely, and construed it as a whole. The deed's plain language reveals the parties' intent that Naylor's interest in the Jeanette Martin term NPRI includes all 1,050 acres of the Jeanette Martin lands and that Naylor's interest in the Florence Martin NPRI includes all 2,440 acres of the Florence Martin lands. The trial court did not err in its rulings on Osley's and Naylor's respective motions for partial summary judgment.

We overrule Osley's issues and affirm the trial court's judgment.

Patricia O. Alvarez, Justice