Paul FREEMAN, Appellant,

v.

STEPHENS PRODUCTION COMPA-
NY, A Division of Stephen Group,
Inc., et al., Appellees.

No. 13–04–208–CV.

Court of Appeals of Texas,
Corpus Christi–Edinburg.

Aug. 18, 2005.

Rehearing Overruled Sept. 29, 2005.

Carlos H. Ochoa, McAllen, Gary E. Ellison, Houston, Mickey Olmstead, Austin, for Appellant.

Steven W. Ellis, Corpus Christi, Charles C. Murray, Atlas & Hall, J.W. Dyer, Dyer & Associates, McAllen, for Appellees.

Donald G. Sinex, Houston, Peter A. Vermillion, Austin, for intervenors.

Before Justices YAÑEZ, CASTILLO, and GARZA.

## OPINION

Opinion by Justice GARZA.

In this appeal from the trial court's final summary judgment, the parties dispute the terms of a 1946 deed by which Paul Freeman conveyed title to certain property to Kenneth R. Hixon and Mary Katherine Hixon (the "Freeman–Hixon Deed"). Freeman's grandson, also named Paul Freeman ("Paul"), claims that the Freeman–Hixon Deed reserved to his grandfather a one-half participating interest in and to all oil, gas, and other minerals in or under the land conveyed by the deed. Paul contends that he owns a one-third interest in this reservation. His claim is opposed by Stephens Production Company, which asserts rights to certain portions of the mineral estate through a mineral lease executed by the Hixons' successors in interest, some of who are intervenors in this matter and also oppose Paul's claim.

Stephens filed suit for declaratory judgment against Paul and four other defendants, asking the trial court to declare that the disputed reservation in the Freeman–Hixon Deed only affected a portion of the

conveyed land known as Lot 288.[1] Paul counterclaimed, seeking a declaration that the reservation was not limited to Lot 288 but affected the entire property conveyed by the deed. Subsequently, the lessors of Stephens' mineral lease filed a plea in intervention, seeking a declaration that the Freeman–Hixon Deed did not reserve any mineral interest in the land covered by their mineral lease with Stephens ("the Closner Lots") and to establish their ownership of the mineral estate of the Closner Lots.[2]

Stephens, Paul, and the intervenors each filed traditional motions for summary judgment, arguing that the Freeman–Hixon Deed was unambiguous and supported their respective positions. In addition, Stephens and the intervenors argued that Paul's claim for declaratory relief was barred by res judicata. In response, Paul argued that the claims asserted by Stephens and the intervenors were barred by estoppel by deed and limitations. Before the trial court ruled on their motion, the intervenors settled their claims with all defendants other than Paul, and all claims between these defendants, the intervenors, and Stephens were dismissed with prejudice. The trial court then entered a final summary judgment for Stephens and the intervenors against Paul, who now appeals by four issues. Because genuine issues of material fact remain unresolved, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.[3]

**1.** The other defendants are Hemus, Ltd., which was non-suited; Paula Kendall Taylor, individually and as independent executrix of the Estate of Byrd Freeman Kendall, deceased; Clemmie Dora Freeman; and Charles Macon Freeman.

**2.** The intervenors are Charlie A. Hudson; Gregory T. Smith; Bruce Ihrig; Charlie Hudson, Jr.; David Drinkard; Meredith Land &

## I.

■ In his first issue, Paul contends that the trial court erred as a matter of law by interpreting the reservation clause to apply only to Lot 288. Paul contends that the following language from the deed unambiguously reserves an undivided one-half interest in the mineral estate of all lots conveyed by the deed:

I, Paul Freeman, ... do Grant, Sell and Convey, unto the said Kenneth R. Hixon and Mary Katherine Hixon of the County of Hidalgo of Texas all that certain lot, tract or piece or parcel of land lying and being situated in Hidalgo County, Texas, to-wit:

All of Lot 1, Block 15; Lot 2, Block 15; The West 17.51 acres of Lot 3, Block 15; All of Lot 10, Block 15; All of Lot 9, Block 15; All of Lot 11, Block 15; All of Lot 12, Block 15; out of the Closner Subdivision of Porciones 71 and 72, also known as the San Juan Tract, Hidalgo County, Texas; EXCEPT such minerals as Grantor does not own; AND ALL of Lot No. 288 of the Kelly–Pharr Subdivision of Porciones 69 and 70, Hidalgo County, Texas; EXCEPT that there is reserved in Grantor an undivided one-half participating interest in and to all of the oil, gas or other minerals in or under said tract of land....

■ If the language of a deed is unambiguous, the court's primary duty is to ascertain the intent of the parties from the language of the deed by using the "four corners" rule. *French v. Chevron U.S.A.,*

Minerals Company; Winne Land & Minerals, Inc.; and M.G. and B.B. Smith Partners, Ltd.

**3.** The well-settled standard of review for summary judgments is concisely stated in *Fiallos v. Pagan–Lewis Motors, Inc.,* 147 S.W.3d 578, 582 (Tex.App.-Corpus Christi 2004, pet. denied).

896 S.W.2d 795, 796 (Tex.1995). Whether a written instrument is ambiguous is a question of law for the court. *Lopez v. Munoz, Hockema & Reed,* 22 S.W.3d 857, 861 (Tex.2000). A written instrument is ambiguous if its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning. *Towers of Tex., Inc. v. J & J Systems, Inc.,* 834 S.W.2d 1, 2 (Tex.1992). Such is the case here.

No single reasonable meaning clearly emerges from the language of the instrument. To the contrary, we are equally uncertain and doubtful of the opposite interpretations advanced by the parties. The reservation speaks of its subject as a "tract." Use of this singular noun indicates that the reservation applies only to Lot 288 and not to the other lots. Nevertheless, the first clause of the grant also speaks of a "lot, tract or piece or parcel of land," even though the deed conveys eight different lots. Thus, the reservation's use of the singular noun "tract" to describe its subject is consistent with the deed's use of the singular noun "tract" to describe multiple lots and, in fact, the entire conveyance. This indicates that the reservation applies to all lots. Still, the deed refers to the Closner Lots collectively as the "San Juan Tract" and then proceeds to list Lot 288 separately, indicating that the Closner Lots and Lot 288 are treated as two different tracts. The reservation would then apply only to the second tract, Lot 288. Further complicating matters is the reservation's location in a clause rather than a separate sentence. It thus appears to modify only the noun immediately preceding it, Lot 288. Given the foregoing considerations, this Court can only speculate as to the effect of reservation. We are uncertain and doubtful of both interpretations advanced by the parties.

Because the deed is ambiguous, the trial court erred by granting summary judgment based on its interpretation of the deed. A jury should hear evidence and determine the parties' intent. *See Columbia Gas Transmission Corp. v. New Ulm Gas,* 940 S.W.2d 587, 589 (Tex.1996); *see also J. Hiram Moore, Ltd. v. Greer,* —— S.W.3d ——, ——, No. 02–0455, 2005 WL 1186334, *4, 2005 Tex. LEXIS 428, *10 (May 20, 2005) (publication pending). Paul's first issue is sustained in part and overruled in part.

## II.

In his second issue, Paul contends that the trial court erred by denying his motion for summary judgment based on estoppel by deed. As this Court recently noted in *Sauceda v. Kerlin,* "Estoppel by deed stands for the general proposition that 'all parties to a deed are bound by the recitals therein, which operate as an estoppel, working on the interest in the land if it be a deed of conveyance, and binding both parties and privies; privies in blood, privies in estate, and privies in law.'" *Sauceda v. Kerlin,* 164 S.W.3d 892, 915 (Corpus Christi, 2005, no pet. h.) (quoting *Wallace v. Pruitt,* 1 Tex.Civ.App. 231, 20 S.W. 728, 728–29 (Tex.Civ.App.-Houston 1892, no writ)).

In support of his motion for summary judgment, Paul produced evidence that Kenneth R. Hixon and other subsequent interest holders executed multiple conveyances, as well as an oil, gas, and mineral lease, acknowledging that the mineral reservation covered all land conveyed by the Freeman–Hixon Deed, including the Closner Lots. Based on this evidence, Paul argues that the doctrine of estoppel by deed prevents Stephens and the intervenors from taking a position contrary to that of Hixon and their other predecessors in interest.

Stephens and the intervenors, in turn, argue that estoppel by deed cannot be

applied against grantees but only against grantors. They further contend that Paul cannot use estoppel by deed because he was not a party to the instruments upon which he relies. Finally, they maintain that the instruments produced as evidence by Paul conveyed interests in Lot 288, as well as the Closner Lots, and thus their references to the prior mineral reservation simply placed later grantees on notice of the reservation's existence as to certain acreage out of the land conveyed (i.e., Lot 288).

■ We disagree with two of these contentions. First, estoppel by deed can be applied against grantors and grantees alike, along with their privies. *See id.* at 915–916. Second, this Court is aware of no requirement that the litigant invoking estoppel by deed be a party to the deed. Although the party against whom estoppel is sought must be a party or a privy, to this Court's knowledge, there is no corresponding requirement for the party invoking estoppel. No cases imposing such a requirement have been cited by Stephens or the intervenors.

■ We turn to the evidence produced in support of Paul's motion. As argued by Stephens and the intervenors, the instruments relied upon by Paul convey interests in both the Closner Lots and Lot 288. Because there is no dispute that Lot 288 is subject to the reservation of the Freeman–Hixon Deed, the acknowledgment of the reservation in these instruments is not necessarily an acknowledgment that the reservation applies to the Closner Lots. In fact, two of the instruments use the same murky language and format as the Freeman–Hixon Deed, making this Court no more certain of their meaning than that of the Freeman–Hixon Deed.[4]

However, one of the instruments uses a different format and provides some evidence that the reservation applies to the Closner Lots. This document, a special warranty deed, was executed on September 18, 2001 between intervenor M.G. and B.B. Smith Partners, Ltd. and Keller Real Estate Investments, Inc. (the "Smith–Keller Deed"). It specifically conveys 66.23 acres out of Lots 1, 2, 3, and 10, Block 15 of the Closner Subdivision, which it refers to as "Tract 1." The Smith–Keller Deed states that Tract 1 is subject to the undivided one-half reservation provided for by the Freeman–Hixon Deed. Although the Smith–Keller Deed thus appears to be conclusive proof that the reservation applies to the Closner Lots, its evidentiary value is belied by a second conveyance made within the same deed. Along with Tract 1, the Smith–Keller Deed also conveys land referred to as "Tract 2," which is comprised of 239.01 acres out of Lots 2, 3, 8, 9, 10, 11, 12, and 13, Block 15 of the Closner Subdivision and Lots 287, 288, 289, and 290 of the Kelly–Pharr Subdivision. Notably, the deed does not list the reservation provided for by the Freeman–Hixon Deed as one of the 47 reservations applicable to Tract 2. This is especially noteworthy because Tract 2 includes not only portions of the Closner Lots but also Lot 288. Tract 2 also includes Lots 2, 3, and 10, portions of which are included in Tract 1 and expressly made subject to the reservation of the Freeman–Hixon Deed. Further diminishing the evidentiary value of the Smith–Keller Deed is the exclusion of Lots 9, 11, and 12 of the Closner Subdivision from Tract 1. These lots are included in Tract 2, which is not expressly subject to the reser-

---

4. These instruments are (1) a warranty deed from Kenneth Hixon and Katherine Hixon to Morris Granville Smith recorded on December 10, 1947 and (2) a special warranty deed from Morris Granville Smith and his wife, Barbara Smith, to intervenor M.G. and B.B. Partners, Ltd., which is dated August 29, 1997.

vation of the Freeman–Hixon Deed. In sum, the Smith–Keller Deed is some evidence that the reservation extends to the Closner Lots, but it is inconsistent and therefore insufficient to eliminate all genuine issues of material fact. *See* Tex.R. Civ. P. 166a(c).

The final instrument submitted by Paul is a November 19, 1975 oil, gas, and mineral lease executed by Morris Granville Smith and Barbara Smith in favor of Paul S. Freeman, Paul's grandfather. The lease grants

> All our mineral interest in Lots One (1), Two (2), Three (3), Eight (8), Nine (9), Ten (10), Eleven (11), Twelve (12) and Thirteen (13) . . . in Block Fifteen (15), John H. Closner, et al Subdivision, Hidalgo County, Texas; and Lot Two Hundred Eighty–Eight (288), out of the Kelly–Pharr Subdivision, Hidalgo County, Texas.

The lease provides a "pooling" area of 320 acres and then states that "for purposes of calculating the rental payments hereinafter provided for, said land is estimated to comprise 160 acres, whether it actually comprises more or less." According to Paul, the difference between the 320–acre pooling area and 160–acre estimation of the land proves that the Smiths only owned one-half of the mineral interest in the land, which is the same land conveyed by the Freeman–Hixon Deed. Paul argues that the Smiths thus acknowledged that the reservation of the Freeman–Hixon Deed extends to the Closner Lots.

Although the mineral lease is some evidence to support Paul's contention, it fails to eliminate all genuine issues of material fact. *See id.* The exact acreage of the land covered by the mineral lease is not stated anywhere in the lease. Paul assumes that the acreage is 320, but this amount is derived from the pooling provision, not from any statement regarding the exact acreage of the land. If the correct acreage of the land were 160 acres, Paul's theory would fail because the mineral interest conveyed would be 100% of what the Smiths owned. Without parol evidence, it is impossible to know with any certainty whether the actual acreage is 160, 320, or some other amount. Accordingly, Paul did not establish his entitlement to judgment as a matter of law on his defense of estoppel by deed. Paul's second issue is therefore overruled.

## III.

In his third issue, Paul contends that the trial court erred by granting intervenors' motion for summary judgment based on res judicata. The trial court's judgment specifies that its decision was based on its interpretation of the Freeman–Hixon Deed, not on res judicata. The judgment states that the Freeman–Hixon Deed did not reserve any mineral interest in the Closner Lots to Paul Freeman Senior. Accordingly, this Court need not consider whether the judgment could be upheld based on res judicata. *See* Tex.R.App. P. 47.1; *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993). Paul's third issue is overruled.

## IV.

In his fourth issue, Paul contends that the trial court erred by failing to grant his motion for summary judgment against the intervenors based on limitations. According to Paul, the intervenors or their predecessors-in-title have been on notice of his grandfather's claim of ownership of the minerals since at least 1949 and are therefore barred by the statute of limitations from disputing ownership. We construe this as a claim of adverse possession, as the only authority relied upon by Paul is *Natural Gas Pipeline Co. of America v. Pool*, 124 S.W.3d 188, 192–93 (Tex. 2003), a case involving a claim of adverse possession of a mineral estate. Paul's mo-

tion for summary judgment alleges that his grandfather "long continued possession and exercise of dominion as an owner of one-half of the mineral in the subject lands"; however, the evidence attached to the motion is insufficient evidence to prove this assertion.[5]  Because actual possession of the minerals must occur, *see id.*, the trial court did not err by denying Paul's motion for summary judgment based on adverse possession.  Paul's fourth issue is overruled.

## V.

As it relates to the claims between Stephens, Paul, and the intervenors, the judgment of the trial court is reversed and the case is remanded for further proceedings consistent with this opinion.  The remainder of the judgment, specifically, the dismissal with prejudice of the claims between Stephens, the other defendants, and intervenors, has not been challenged in this appeal and is therefore affirmed.  *See* Tex.R.App. P. 44.1(b).

---

**5.**  Attached to the motion are an inventory of the estate of Pat Freeman and an affidavit by Paul, which discusses Paul's knowledge regarding the inventory.  The evidence does not prove or purport to prove that either Paul, his grandfather, or any of Paul's other predecessors-in-interest actually possessed the mineral estate for the requisite statutory period of time.