# IN THE SUPREME COURT OF TEXAS

No. 17-0736

TEAL TRADING AND DEVELOPMENT, LP, PETITIONER,

v.

CHAMPEE SPRINGS RANCHES PROPERTY OWNERS ASSOCIATION, RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS

**Argued September 26, 2019**

JUSTICE BLAND delivered the opinion of the Court.

In this suit between adjoining landowners, we determine whether a neighborhood association may enforce a restrictive easement against neighboring property. The disputed easement encircles nearly 10,000 acres of land in Kendall and Kerr counties, largely restricting access to a main entrance. The original tract was subdivided after the easement was created. Today, part of the acreage is occupied by the Champee Springs Ranches neighborhood, represented here by its property owners association.

The petitioner, Teal Trading and Development, LP, owns two parcels of undeveloped property. One of Teal's parcels borders Champee Springs, sits within the original tract, and is burdened by the restrictive easement. Teal's other parcel lies next to the first, outside the restrictive easement. Teal seeks to avoid the easement, to connect both properties to existing public roads in

Champee Springs, and to develop the parcels into a residential subdivision. To further these plans, Teal's predecessor built a private construction road across the easement, in violation of the easement's access restriction. Champee Springs sued to enforce the easement.

The trial court enforced the easement, ruling that the easement burdens Teal's property. The court rejected Teal's waiver and estoppel affirmative defenses, and Teal's further challenge that restrictive easements that limit private access are void against public policy. The court of appeals affirmed. Before this Court, Teal raises a standing challenge and reurges its waiver, estoppel, and public-policy arguments.

We hold that Champee Springs has standing to sue to enforce the easement. We further hold that the evidence supports the trial court's rejection of Teal's affirmative defenses. Finally, we decline Teal's invitation to void restrictive access easements on public-policy grounds. In our view, the permissibility of such easements, at least under these facts, is an issue best left to the legislature and local governments. Accordingly, we affirm the judgment of the court of appeals.

**I**

**A**

In June 1998, E.J. Cop purchased 9,246 acres in Kendall and Kerr counties. Cop platted the land as a residential development and called it Champee Springs Ranches. In conjunction with the plat, Cop signed and recorded a "Declaration of Covenants, Conditions, and Restrictions," for the purpose of protecting the "value," "attractiveness," and "desirability" of the property. Among the restrictions is the disputed easement, which largely restricts private access to a main entrance:

> There is hereby reserved unto Declarant a one (1) foot easement for precluding and prohibiting access to the PROPERTY or Ranger Creek Road or Turkey Knob Road by adjoining property owners other than Declarant and Declarant's express assigns. This easement is inside of and contiguous to the perimeters of the PROPERTY as

2

described in exhibit "A" hereto, provided that no easement is reserved over, across or upon any public road right-of-way which is dedicated by and shown on that certain Plat of Champee Springs Ranches . . . and further provided Tract 4 of said Champee Springs Ranches subdivision shall be entitled to one access entrance across the restrictive covenant along the southwestern boundary line of said Tract 4, but none other access without Declarant's express written consent thereto.

The parties agree that the easement prevents the landowners burdened by it from permitting private access through the easement along the boundary of the original perimeter of Cop's tract.[1]

In July 1998, Cop sold 1,328 acres in Champee Springs to a buyer, who resold 660 of those acres in the northwest corner. The new buyers platted the acreage as Privilege Creek Ranches. Teal now owns this parcel.

In July 1999, the Champee Springs landowners replatted their acreage, subdividing their existing interior lots. The replat was filed in Kendall County. Teal's property—located entirely in Kerr County—was not part of the replat and is not shown on the plat maps. The replat lists new "boundary and interior lot line calls" for the property, and utility easements that "affect this property." But it does not list the disputed restrictive easement, and the interior boundary notes state: "RESERVE STRIPS / NON ACCESS EASEMENTS ARE NOT ALLOWED UNLESS THEY ARE DEDICATED TO THE COUNTY."[2]

Eventually, Teal's predecessor-in-title, BTEX Ranch, LP, purchased the Privilege Creek acreage and an adjoining 1,173 acres immediately to the north. The Privilege Creek acreage—part of Cop's original tract—is burdened by the restrictive easement. The adjoining acreage to the

---

[1] Teal refers to restrictive access easements as "spite strips," while Champee Springs and our case law has referred to them as "non-access easements." *See City of San Antonio v. TPLP Office Park Props.*, 218 S.W.3d 60, 62 (Tex. 2007).

[2] Although we reproduce this note in the all-caps format in which it appears, all notes in the replat are in capital letters and share the same font size.

north—not part of Cop's original tract—is outside the restrictive easement. The restrictive easement thus bisects Teal's contiguous parcels.

In 2006, BTEX attempted to develop both tracts as one residential subdivision. To that end, BTEX built a private construction road, in violation of the restrictive easement, connecting Turkey Knob Road, located within the Privilege Creek tract and Champee Springs, to Lane Valley Road, which runs roughly north-south through both of Teal's tracts. If the construction road became a permanent private road, the implication for Champee Springs residents was that their one-way-in-one-way-out neighborhood would become a private throughway for new residential developments to the northwest.

**B**

Seeking to enforce the easement, the Champee Springs Ranches Property Owners Association intervened in a lawsuit filed against BTEX by Kendall County. The trial court severed Champee Springs' claims into a separate lawsuit. Meanwhile, Teal acquired BTEX's land through foreclosure and intervened in the lawsuit.

In the trial court, the parties moved for summary judgment. Champee Springs contended that the court should enforce the easement because Teal purchased the property subject to the easement. The easement is recorded in Teal's deed, and it appears in the chain of title from its inception. Teal, on the other hand, responded that the easement is void against public policy because it is an improper restraint on the use and alienation of real property and contrary to Kerr County subdivision regulations. Relying on the 1999 replat and its notation that restrictive easements are "not allowed," Teal also raised the affirmative defenses that Champee Springs waived or is estopped from enforcing the easement against Teal.

4

The trial court granted summary judgment in favor of Champee Springs, and Teal appealed. In the first appeal, the court of appeals reversed, holding that fact issues existed as to Teal's affirmative defenses; we denied review.[3] On remand, the trial court declared that the easement was an enforceable covenant and not an unreasonable restraint against alienation or use. The court held a bench trial on Teal's affirmative defenses: waiver, estopped-by-deed, estoppel-by-record, and quasi-estoppel.

Based on the evidence presented, the trial court rejected Teal's affirmative defenses. Given the recognition of the easement in all of the parties' deeds before and after the 1999 replat, the trial court found that the replat did not support Teal's waiver and estoppel arguments. The court signed a judgment declaring the easement valid, binding, and enforceable against Teal as a covenant running with the land.

Teal appealed again. The court of appeals this time affirmed the trial court's judgment.[4] The court applied the rule that "when parties attempt to alter or revoke a restrictive covenant, such alteration or revocation is ineffective in the absence of agreement of all owners whose properties are affected by the restrictive covenant."[5] Because not all owners affected by the easement signed the replat, the court held that those who signed it could not effectively disclaim the easement.[6] The court thus rejected Teal's arguments on waiver, estoppel-by-deed, and estoppel-by-record.[7] The court of appeals further expressed its reservations that Teal could invoke estoppel-by-deed and

---

[3] *Teal Trading and Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n*, 432 S.W.3d 381, 384 (Tex. App.—San Antonio 2014, pet. denied).

[4] 534 S.W.3d 558, 565 (Tex. App.—San Antonio 2017).

[5] *Id.* at 585 (citing *Zent v. Murrow*, 476 S.W.2d 875, 878 (Tex. App.—Austin 1972, no writ)).

[6] *Id.*

[7] *Id.* at 586.

5

estoppel-by-record because Teal's property was not part of the 1999 replat. The court observed that "it has long been the law in Texas that recorded documents are not competent evidence of such recitals as between a party to the document and a stranger thereto."[8]

The court of appeals separately considered Teal's quasi-estoppel argument because, unlike estoppel-by-deed and estoppel-by-record, the doctrine is not foreclosed by Teal's status as a stranger to the 1999 replat.[9] Even so, the court of appeals held that the evidence did not establish that those who signed the 1999 replat disclaimed the right to enforce the pre-existing easement.[10] Finally, the court of appeals rejected Teal's argument that the easement is void against public policy.[11]

## C

In its petition to this Court, Teal newly contends that Champee Springs lacks standing to sue to enforce the easement, and thus the suit should be dismissed for lack of subject-matter jurisdiction. Champee Springs lacks standing, Teal argues, because the easement at its inception failed to impose mutual obligations on the land that it burdens. Further, even if the easement created mutual obligations, Teal contends mutuality was lost when Cop released 25 percent of the original tract from the easement, and Champee Springs later replatted its property without referring to the easement, while noting that restrictive easements are "not allowed."

Teal reurges its waiver and estoppel arguments, insisting that the 1999 replat bars Champee Springs from enforcing the easement as a matter of law. Finally, Teal invites this Court to declare

---

[8] *Id.* (citing *Tex. Co. v. Lee*, 157 S.W.2d 628, 631 (Tex. 1941)).

[9] *Id.* at 586–88.

[10] *Id.* at 588.

[11] *Id.* at 593.

6

restrictive access easements—and this one in particular—to be unenforceable as a matter of public policy because they are "foreign and repulsive" to Texas property law.

## II

In an argument newly crafted for this Court, Teal challenges Champee Springs' standing to sue to enforce the easement. It argues that the easement fails to impose mutual obligations, and this failure defeats "constitutional standing even to attempt enforcement."

A plaintiff has standing to sue when the pleaded facts state a "concrete and particularized, actual or imminent, not hypothetical" injury.[12] Standing is a "prerequisite to subject-matter jurisdiction, and subject-matter jurisdiction is essential to a court's power to decide a case."[13] Because constitutional standing implicates subject-matter jurisdiction, it cannot be waived and can be raised at any time.[14]

In this Court, Teal contends that Champee Springs' alleged injury is illusory because the landowners initially subject to the easement were not "mutually burdened by the same restriction."[15] To support its claim that mutuality was non-existent from the beginning, Teal observes that its property "is farthest from where the public road enters the enclosed area— approximately *ten miles* away from the entrance," whereas the average Champee Springs resident is closer to the main-entrance access that the easement permits. Teal also observes that the restrictive covenant includes an exception for one tract, allowing that owner an access point along

---

[12] *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 155 (Tex. 2012) (quoting *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304–05 (Tex. 2008)).

[13] *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000).

[14] *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–45 (Tex. 1993).

[15] *See Davis v. Huey*, 620 S.W.2d 561, 568 (Tex. 1981) (acknowledging "mutuality of obligation" as "central to the purpose of restrictive covenants").

the southwestern boundary. Finally, Teal contends that "if any mutuality ever existed, it has long since dissipated," because Cop released about 2,200 acres from the restriction, and Champee Springs disclaimed its intent to be bound by the easement when it filed the 1999 replat.

Champee Springs responds that it has standing because the Property Code provides that a "property owners' association . . . may initiate, defend, or intervene in litigation . . . affecting the enforcement of a restrictive covenant . . . ."[16] Standing is not conditioned on whether Champee Springs' claims are ultimately valid. Rather, standing merely requires that the parties to the suit be subject to the covenant, which Champee Springs has demonstrated. And no rule provides that standing to enforce restrictive covenants is contingent on a finding that its burdens are evenly imposed among landowners.

Teal replies that the Property Code grants property owners associations authority to litigate claims on behalf of their membership, but it does not permit property owners without standing to sue simply by using an association. In other words, the statutory authorization the Property Code confers does not determine whether Champee Springs has constitutional standing to bring its claims.

We conclude that Champee Springs has demonstrated its constitutional standing to bring this suit. Teal vigorously disputes the validity of the restrictive covenant but does not dispute that the covenant putatively applies to the properties involved. Teal argues Champee Springs residents disclaimed the easement in the 1999 replat—a question we consider separately—but it is undisputed that (1) the restrictive covenant appears in the chain of title for the properties owned

---

[16] TEX. PROP. CODE § 202.004(b).

by the parties to this case, both before and after the 1999 replat, and (2) Teal purchased its property with knowledge of the easement.

Champee Springs pleaded that its members "would suffer injury if their secluded community became a driveway for all comers due to unrestricted access" and that Teal built a private access road in violation of the easement. Champee Springs further pleaded that it and Teal are bound by the easement. Because Champee Springs alleges that Teal has violated a restrictive easement that burdens it and Teal's property, Champee Springs pleaded an injury in fact.[17]

Teal's position that a lack of mutual obligation poses a standing defect is rooted in *Curlee v. Walker*, in which we held that subsequent purchasers who were not parties to a restrictive covenant may nonetheless sue to enforce it when they are similarly burdened.[18] *Curlee* does not mention standing. Teal points out, however, that we later characterized *Curlee* as "a standing case." *Evans v. Pollock*, 796 S.W.2d 465, 466 (Tex. 1990) (describing *Curlee* as "a standing case in which we expressly addressed whether the owner of a lot subject to a restrictive covenant had standing to assert the restrictive covenant in another landowner's deed").

Teal reads *Curlee* and *Evans* too broadly. *Curlee* answered whether subsequent purchasers can *ever* sue to enforce a preexisting restrictive covenant. *Curlee* categorically determined that

---

[17] *See Heckman*, 369 S.W.3d at 155 ("As for the injury itself, it must be concrete and particularized, actual or imminent, not hypothetical" and "fairly traceable to the defendant's conduct." (internal quotation marks and citation omitted)).

[18] 244 S.W. 497, 498 (Tex. 1922) ("[A] purchaser and his assigns may enforce the covenant against any other purchaser, and his assigns, if he has bought with actual or constructive knowledge of the scheme, and the covenant was part of the subject-matter of his purchase." (quoting *Hooper v. Lottman*, 171 S.W. 270, 272 (Tex. App.—El Paso 1914, no writ))).

9

burdened landowners may sue to "enforce covenants to which they were not parties."[19] It does not follow that *any* argument about the validity of a covenant presents a jurisdictional hurdle.

Teal's primary case in support of its mutual-obligation defense demonstrates that lack of mutuality does not equal lack of constitutional standing. Teal cites *Davis v. Huey*[20] to support its argument that "[a]n unequal distribution of the burdens and benefits of the restriction will prevent adequate mutuality." In that case, a developer rejected a building plan because the "proposed placement of the house on the lot was inconsistent with the general plan of the subdivision."[21] The restrictive covenant, however, did not restrict lot placement.[22] Rather, rejection was based on maintaining consistency with "the voluntary decisions of neighboring lot owners who had the good fortune" to choose their lot placement early in the neighborhood's development.[23] For that reason, we observed that the restriction sought to be enforced "lacks the mutuality of obligation central to the purpose of restrictive covenants."[24] But we never suggested that lack of mutuality deprived the court of jurisdiction to hear the dispute. A mutual-obligation defense does not deprive Champee Springs of standing to sue when Champee Springs otherwise has alleged the violation of a recorded restrictive easement that burdens both it and Teal's land.[25]

---

[19] 244 S.W. at 498 (quoting *Hooper*, 171 S.W. at 272). Upon resolving whether subsequent purchasers who are burdened by the covenant can sue, the *Curlee* court turned to whether a ten-year limitation in the covenant at issue was uniform—or, as Teal would put it, a "mutual obligation"—because it did not "begin and end simultaneously" for all purchasers. *Id.* at 498–99. The Court rejected this argument and upheld the covenant but gave no indication that it considered mutuality to be a standing issue. *Id*. In fact, the word "standing" appears nowhere in the opinion.

[20] 620 S.W.2d 561 (Tex. 1981).

[21] *Id.* at 564.

[22] *Id.* at 564, 567.

[23] *Id.* at 568.

[24] *Id.*

[25] *See Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 484–85 (Tex. 2018) (recognizing that a plaintiff "does not lack standing simply because he cannot prevail on the merits of his claim" (quoting *DaimlerChrysler Corp.*

Champee Springs' suit is one "affecting the enforcement of a restrictive covenant" that runs in the deeds to the properties involved in this case, *see* TEX. PROP. CODE § 202.004(b), and Champee Springs maintains that the easement binds its residents and Teal, *see Curlee* 244 S.W. at 498. Accordingly, we hold that Champee Springs has standing to sue to enforce the easement.

Having determined that Teal's mutual-obligation defense does not implicate Champee Springs' standing to sue, we do not further consider it. Lack of mutuality presents a new defense to enforcement that simply has not been raised until now. We have no basis to consider it if it does not implicate this Court's jurisdiction to decide the case.[26]

### III

We next consider Teal's arguments that (1) Champee Springs waived its right to enforce the restrictive easement, and (2) the doctrines of estoppel-by-deed or quasi-estoppel bar Champee Springs from enforcing it.[27] Teal insists that the 1999 replat conclusively established these defenses as a matter of law, and thus we should reject the trial court's findings to the contrary.

"The hallmark characteristic" of an affirmative defense "is that the burden of proof is on the defendant to present sufficient evidence to establish the defense and obtain the requisite . . . findings."[28] We review a trial court's findings for legal sufficiency using the standards we apply in reviewing evidence supporting a jury's answer.[29] The test for legal sufficiency is "whether the

---

*v. Inman*, 252 S.W.3d 299, 305 (Tex. 2008))); *Frost Nat. Bank v. Fernandez*, 315 S.W.3d 494, 503–04 (Tex. 2010) ("Fernandez's pleadings conferred standing, regardless of whether the alleged relationship was true or subject to rebuttal on the merits.").

[26] *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 577 (Tex. 2006) ("Except for fundamental error, appellate courts are not authorized to consider issues not properly raised by the parties.").

[27] Teal does not reurge estoppel-by-record to this Court.

[28] *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 156 (Tex. 2015).

[29] *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994).

11

evidence at trial would enable reasonable and fair-minded people to reach the verdict under review."[30] We credit evidence favoring the finding if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not.[31] Thus, we accept the trial court's findings unless Teal conclusively proved otherwise.[32]

The trial court ruled that Teal did not meet its burden to prove its affirmative defenses. The court found that the 1999 replat did not effectively waive Champee Springs' right to enforce the easement because not all landowners affected by the easement signed the replat. Teal's predecessor did not sign it. Nor did Cop, whom the trial court found reserved the right to enforce the easement.

The court of appeals viewed Teal's burden similarly, deciding that "the relevant inquiry is whether it was necessary for all those affected by the [easement] to sign the 1999 Replat and if so, whether [Teal] proved all those affected by the [easement] signed the 1999 Replat."[33] The court answered the first question yes—all affected owners were required to sign the replat to effectively disclaim the easement.[34] In light of this view, the court of appeals' answer to the second question became an easy no—Teal has never argued that all parties affected by the easement signed the 1999 replat. Under this inquiry, however, Teal observes that the court of appeals never fully

---

[30] *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

[31] *Id.*

[32] *Id.* at 822 ("A reviewing court cannot substitute its judgment for the trier-of-fact, so long as the evidence falls within [the] zone of reasonable disagreement.").

[33] 534 S.W.3d 558, 583 (Tex. App.—San Antonio 2017).

[34] *Id.* at 585. The court of appeals relied on *Zent v. Murrow*, 476 S.W.2d 875 (Tex. App.—Austin 1972, no writ) in holding that "when parties attempt to alter or revoke a restrictive covenant, such alteration or revocation is ineffective in the absence of agreement of all owners whose properties are affected by the restrictive covenant." *Id.*; *see also Smith v. Williams*, 422 S.W.2d 168, 172 (Tex. 1967) (recognizing the narrower rule that "some of the owners of property in a restricted subdivision may not release or modify applicable restrictions without the concurrence of others who own property in the subdivision").

considered whether Champee Springs *intended* to disclaim the easement in the 1999 replat, precluding Champee Springs from enforcing it.

On appeal to this Court, Teal essentially argues that the court of appeals took the wrong approach—that to prove Teal's defenses, it should not matter whether the 1999 replat effectively voided the restrictive easement. What matters, for purposes of waiver and estoppel, is whether the replat conclusively demonstrates that Champee Springs intended to disclaim the easement. Under the correct application of waiver and estoppel doctrines, Teal argues, the trial court and court of appeals erred in rejecting its affirmative defenses as a matter of law.

We agree with Teal's approach, but not its conclusion, and consider its affirmative defenses in turn.

## A

Teal concedes that it adduced no evidence that Champee Springs residents have ever violated the restrictive easement. Teal urges that the replat establishes waiver as a matter of law even absent this showing.

"Waiver is defined as 'an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right.'"[35] Waiver is a question of intent, examining whether a party's conduct, in light of the surrounding facts and circumstances, is "'unequivocally inconsistent with claiming' that right."[36]

---

[35] *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003) (quoting *Sun Expl. & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987); and *U.S. Fid. & Guar. Co. v. Bimco Iron & Metal Corp.*, 464 S.W.2d 253, 257 (Tex. 1971)).

[36] *See LaLonde v. Gosnell*, ___ S.W.3d ___, ___ (Tex. 2019) (quoting *Van Indep. Sch. Dist. v. McCarty*, 165 S.W.3d 351, 353 (Tex. 2005)).

The question here is whether the residents intended the replat to relinquish any enforcement right. The replat vacates eight original tracts within Champee Springs, replats them into smaller interior subtracts, and lists seven utility easements without noting the existing Cop easement. The replat further notes that restrictive easements are "not allowed unless they are dedicated to the county." Teal argues that the omission of the Cop easement and the inclusion of the note together conclusively demonstrate Champee Springs' intent to waive enforcement of the restrictive easement. The omission is glaring, Teal argues, when viewed against the replat's reference to other easements.

Champee Springs responds that this omission is not a "clear repudiation" of a known right because the replat was limited to land in Kendall County. Teal's property lies exclusively in Kerr County and is not included in the replat. Champee Springs further points out that the deeds and records in Teal's chain of title filed in 2004, 2006, and 2009—all subsequent to the 1999 replat— disclose the restrictive easement as a restriction on Teal's title.

The trial court found that the replat failed to establish Teal's waiver defense because the replat did not sufficiently manifest the residents' intent:

- The replat "does not refer to the Cop Declaration containing the Non-Access Easement," nor does it "purport to renounce, waive, disclaim, release, or cancel the pre-existing Non-Access Easement."
- "There is no deliberate, clear and unequivocal statement that the signees of the 1999 replat were waiving their rights and benefits to the pre-existing Non-Access Easement."
- "The Non-Access Easement, by its own definition, does not fall within those kinds of reserve strips prohibited in Kendall County development rules and regulations."
- "There is not sufficient evidence to establish the signees of the 1999 Replat clearly and unequivocally manifested an actual intention to waive, disclaim or relinquish the pre-existing Non-Access Easement, or of intentional conduct inconsistent with the Non-Access Easement."

14

- "The parties' actions and evidence under all the circumstances—post 1999 Replat—do not sufficiently manifest or demonstrate waiver."

The court of appeals concluded that the evidence supports the trial court's findings. We agree, though our reasoning differs a bit because it responds to the arguments Teal presents to this Court. Simply put, the omission and the note in the replat do not conclusively demonstrate "an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right."[37]

The Cop Declaration was no secret. It was created a year before the replat was filed and is recorded in the chains of title of all Champee Springs lots subject to the 1999 replat. Champee Springs adduced evidence that its residents knew about the easement. If Champee Springs residents had intended to repudiate the easement in the replat, they could have done so "unequivocally," with a specific reference to the Cop Declaration.[38] They certainly knew how; the replat identifies seven other easements. They could have announced their intent to release, relinquish, cancel, or terminate the Cop easement. They did not. Although the note states that restrictive easements are not allowed unless they are dedicated to the county, the note does not reject the pre-existing Cop easement.

Teal suggests that the replat's omission of the Cop easement and the note should do the same work. We agree that the replat is some evidence of Champee Springs' intent, but it is not conclusive evidence.[39] Without an unequivocal statement, the note may be intended to prospectively disallow new restrictive easements within the interior boundaries of Champee

---

[37] *See Jernigan*, 111 S.W.3d at 156 (internal quotation marks and citation omitted).

[38] *See LaLonde*, ___ S.W.3d at ___.

[39] *See Keller*, 168 S.W.3d at 822.

15

Springs. Or, as Champee Springs suggests, the note cites Kendall County policy—the local governing jurisdiction that approved the replat—which may or may not supersede a pre-existing recorded easement in the county records.

Either way, the question is whether the note was "unequivocally inconsistent with claiming [the] right" to enforce the Cop easement, such that it speaks louder than the deed records themselves—records that consistently retain the restriction both before and after the 1999 replat.[40] The omission of the restrictive easement, both in the list of existing easements and on the maps themselves, is just that: an omission. Without more, it does not conclusively establish intent to relinquish a pre-existing easement recorded in the deed records. Given that Teal adduced no evidence that Champee Springs had violated the restriction, we cannot agree with Teal that the replat alone establishes Champee Springs' intent to terminate the easement or otherwise relinquish its right to enforce it as a matter of law.

**B**

We turn to Teal's next issue: whether Champee Springs should be estopped by deed from enforcing the restrictive easement against Teal. Teal's underlying factual argument is the same: Champee Springs acted inconsistently with enforcing the easement by disclaiming it in the 1999 replat.

"In the broadest sense, estoppel by deed stands for the proposition that all parties to a deed are bound by the recitals in it, which operate as an estoppel."[41] We have further observed that

---

[40] *See LaLonde*, ___ S.W.3d at ___ (internal quotation marks and citations omitted).

[41] *Trial v. Dragon*, ___ S.W.3d ___, ___ (Tex. 2019) (citing *Greene v. White*, 153 S.W.2d 575, 583–84 (Tex. 1941)).

estoppel-by-deed "does not bind mere strangers."[42] The court of appeals held that Teal could not

invoke an estoppel-by-deed defense because Teal was not a party to the replat. 534 S.W.3d at 586

(citing *Tex. Co. v. Lee*, 157 S.W.2d 628, 631 (Tex. 1941) (following the rule that "recitals in a

deed are evidence against the parties to such deed and their privies, but not against strangers")

(internal quotation marks and citation omitted)).[43] Although Teal suggests *Lee* is of limited value

because it is not an estoppel case, Teal does not dispute the larger point: as a stranger to the 1999

recital, Teal is not, generally speaking, entitled to invoke estoppel-by-deed against the document's

signatories.[44] Teal suggests that this case "provides an opportunity for this Court to clarify how

mutuality in estoppel by deed should apply in the modern age."

We decline Teal's invitation to reshape the contours of estoppel-by-deed. Even if we held

that Teal, as a stranger to the 1999 replat, could invoke the estoppel-by-deed doctrine against

Champee Springs, Teal would not prevail, for the same reasons Teal has not established waiver as

a matter of law. Although waiver and estoppel are distinct doctrines, Teal's argument that both

apply is based solely on the 1999 replat, which we have held does not conclusively establish

Champee Springs' intent to relinquish the pre-existing easement by identifying it and disclaiming

it. Estoppel-by-deed turns not on intent but simply on the "recitals" in the deed, which "operate as

---

[42] *Id.* at __ (citing *Carver v. Jackson*, 29 U.S. 1, 83 (1830)).

[43] *See also Robinson v. Davenport*, 40 Tex. 333, 337 (1874) ("An estoppel by deed extends only to parties and privies thereto, and not to strangers."). The court of appeals identified only one case "in which a Texas court has held that recitals in [a] recorded instrument can be invoked by strangers to the recorded instrument." 534 S.W.3d 558, 586 (Tex. App.—San Antonio 2017) (citing *Freeman v. Stephens Prod. Co.*, 171 S.W.3d 651, 655 (Tex. App.—Corpus Christi-Edinburg 2005, pet. denied)). But the court of appeals viewed *Freeman* as "contrary to the weight of Texas authority" and "not persuasive." *Id.* (citing *Sloan ex. rel. Juergens v. Urban Title Servs., Inc.*, No. 06 Civ. 1524 (CKK), 2011 WL 1137297, at *4 (D.D.C. Mar. 27, 2011) (observing that *Freeman* "does not . . . reflect the settled law of Texas.")).

[44] *See Trial*, ___ S.W.3d at ___; *Tex. Co. v. Lee*, 157 S.W.2d 628, 631 (Tex. 1941).

17

an estoppel."[45] Although estoppel-by-deed presents the question under a different theory, our reading of the 1999 replat applies with equal force: Champee Springs did not expressly disclaim its right to enforce the easement against Teal. Accordingly, we have no basis to disturb the trial court's conclusion that Teal failed to establish its estoppel-by-deed defense.

## C

The same is true for Teal's quasi-estoppel argument. "Quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken."[46] The doctrine applies when "it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit."[47] Teal insists that Champee Springs' conduct is unconscionable because the Champee Springs residents who signed the replat "represented to the public that the replat correctly showed all easements," a position inconsistent with enforcing the easement against Teal. These inconsistent positions allowed Champee Springs' successors-in-interest to "pick and choose which parts of the replat are enforceable." Teal further suggests Champee Springs attained a benefit by disclaiming the easement—approval of its replat—and cannot now revive the easement to enforce it against Teal.

The question, again, is whether Champee Springs in fact took a position in the 1999 replat inconsistent with asserting its right to enforce the easement against Teal. Although the replat fails to list the restrictive easement in the list of "easements [that] affect the property," the list does not

---

[45] *Trial*, ___ S.W.3d at ___.

[46] *Lopez v. Muñoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000).

[47] *Id.*

18

propose to be exhaustive or otherwise establish that Champee Springs disclaimed any easement not listed on the interior boundary notes.

The note providing that restrictive easements are "not allowed" similarly does not establish that Champee Springs took a position inconsistent with enforcing the easement. It is unclear whether the note amounts to a position taken by Champee Springs or is instead a general proscription required by the governing jurisdiction as to future subdivisions of the land. Thus, it is unclear whether the note applies retrospectively to an existing, known right.

The replat is some evidence that Champee Springs took a position inconsistent with enforcing the easement against Teal. But it is not conclusive evidence. Even if it were, it is difficult to see how the inconsistency is "unconscionable" when applied to Teal, which bought its land fully aware of the easement.[48] Teal claims that the court of appeals imposed an extra element to quasi-estoppel, wrongly requiring Teal to prove that Champee Springs "had knowledge of all material facts at the time it executed the 1999 Replat."[49] Our holding, however, does not rest on lack of knowledge, but on a lack of an expressly inconsistent position benefitting Champee Springs. Accordingly, we hold that Teal has not demonstrated that the trial court's rejection of its quasi-estoppel defense was error as a matter of law.

---

[48] *Id.*

[49] 534 S.W.3d 558, 587 (Tex. App.—San Antonio 2017) (citing *Bank of Am., N.A. v. Prize Energy Res., L.P.*, 510 S.W.3d 497, 511–12 (Tex. App.—San Antonio 2014, pet. denied)).

# IV

Teal urged both the trial court and the court of appeals to declare this restrictive easement void against public policy.[50] Both courts declined. Before this Court, Teal stresses that the restrictive easement violates state public policy.

Courts should refrain from nullifying a transaction because it is contrary to public policy, "unless the transaction contravenes some positive statute or some well-established rule of law."[51] Teal urges that we should draw the line at restrictive easements that limit access because they alienate landowners from their neighbors and hinder economic development, in contravention of Texas' preferred policy favoring the highest and best use of land. Teal contends that the common law only "begrudgingly" tolerates restrictive covenants.[52] In this case, Teal argues, the easement imposes unreasonable travel burdens.

Champee Springs responds that the legislature has not prohibited restrictive access easements, despite enacting legislation foreclosing other types of restrictive covenants. Nor is

---

[50] In the courts below, Teal's argument was based mainly on Kerr County subdivision regulations. At the time Cop filed the Declaration, those regulations prohibited restrictive easements that denied access to public land: "Reserve strips [are] prohibited. There shall be no reserve strips controlling the only access to land dedicated or intended to be dedicated for public use." KERR COUNTY, TEX., SUBDIVISION RULES & REGULATIONS, § 5.01.B (May 11, 1998). Both courts below declined to hold the restrictive easement here void against public policy based on Teal's argument that the easement is inconsistent with this prohibition and other subdivision regulations. *See* 534 S.W.3d at 588–93. The reserve-strip regulation on its face applies only to "land dedicated or intended to be dedicated for public use." There is no argument here that the disputed land within Champee Springs serves a public use.

[51] *Lawrence v. CDB Servs., Inc.*, 44 S.W.3d 544, 553 (Tex. 2001) (quoting *Sherrill v. Union Lumber Co.*, 207 S.W. 149, 153–54 (Tex. App.—Beaumont 1918, no writ)).

[52] *See Tarr v. Timberwood Park Owners Ass'n*, 556 S.W.3d 274, 279–280 (Tex. 2018) (observing that "[t]he right of individuals to use their own property as they wish remains one of the most fundamental rights that individual property owners possess" and that "our jurisprudence does not favor restraints on the free use of land," but acknowledging that "restrictive covenants can enhance the value of real property" (internal quotations marks and citations omitted)).

Teal's appeal to public policy particularly sympathetic—Teal knowingly purchased land subject to the easement it now seeks to declare void.

We decline Teal's invitation to declare this restrictive access easement void. Teal makes reasonable arguments that restrictive easements can be problematic. But bad policy—which often lies in the eye of the beholder—does not automatically dispel an otherwise enforceable deed restriction. Our authority under the common law to declare a valid contractual provision void is tempered by relevant expressions of public policy from the legislature. Simply put, when the legislature has spoken on the topic, we generally consider its statutory enactments to be expressions of public policy.[53] And the legislature has spoken extensively about restrictive covenants, both upholding their enforcement and setting limits.[54] These legislative decisions to regulate and even prohibit some restrictive covenants—but not restrictive easements like this one—militate against this Court's exercise of its common-law authority.[55] The legislature has told us that a restrictive covenant not proscribed by statute should be "liberally construed to give effect to its purpose and intent." TEX. PROP. CODE § 202.003(a).

Nor is it clear to us that the common law suggests a public policy that contravenes this restrictive easement. Teal points out that we have said covenants restricting the free use of land

---

[53] *Town of Flower Mound v. Stafford Estates L.P.*, 135 S.W.3d 620, 628 (Tex. 2018) ("Generally, 'the State's public policy is reflected in its statutes.'" (quoting *Tex. Commerce Bank, N.A. v. Grizzle*, 96 S.W.3d 240, 250 (Tex. 2002))).

[54] *See generally* TEX. PROP. CODE §§ 201.001–213.014; *see also id.* § 202.007 (prohibiting certain restrictive covenants).

[55] *See City of Laredo v. Laredo Merch. Ass'n*, 550 S.W.3d 586, 597 (Tex. 2018) (holding that "[i]f consumer products were to be excluded from [a statutory] preemption provision, the Legislature would have said so, as it did by excluding consumer products elsewhere in the [Texas Solid Waste Disposal Act]").

"are not favored."[56] But for over a century we have enforced them.[57] We can discern no "well-established rule of law" that compels us to put a common-law thumb on the public-policy scale either way in this case.[58]

Finally, Teal informs us that fourteen counties and six of Texas' largest cities have banned some types of restrictive easements. Teal suggests this shows that these easements are "subject to public censure." These enactments suggest that local governments have proved themselves able to regulate restrictive easements, without interference from courts. We have stated that, when restrictive covenants are "confined to a lawful purpose and are clearly worded, they will be enforced."[59] We will not deviate from that rule today.

* * *

We hold that Champee Springs has standing to sue to enforce the easement. We further hold that the evidence supports the trial court's rejection of Teal's affirmative defenses of waiver and estoppel. Finally, we decline to declare the restrictive easement void on public-policy grounds. We therefore affirm the judgment of the court of appeals.

_____

Jane N. Bland
Justice

OPINION DELIVERED:  January 31, 2020

---

[56] *Wilmoth v. Wilcox*, 734 S.W.2d 656, 657 (Tex. 1987).

[57] *See, e.g.*, *Curlee v.* Walker, 244 S.W. 497, 498 (Tex. 1922).

[58] *Lawrence v. CDB Servs., Inc.*, 44 S.W.3d 544, 553 (Tex. 2001) ("Courts must exercise judicial restraint in deciding whether to hold arm's-length contracts void on public policy grounds.").

[59] *Wilmoth*, 734 S.W.2d at 657.